ALBANY,
June, 1832.

Robert
v.
Ditmas.

May.

---

ROBERT *vs.* DITMAS, administratrix, &c.

In a *reference* under the statute for the recovery of a demand due from
   a *testator* or *intestate*, the creditor or claimant is not entitled to costs, al-
   though he obtain a report in his favor, unless the payment of the demand
   has been unreasonably resisted or neglected ; the rule is the same in the
   case of a *reference* as when a suit is prosecuted.
*It seems* there should be a *record* of the proceedings made by the claimant for
   the protection of the executor or administrator, and that *execution* may issue
   upon the judgment rendered on the report of the referees.
Executors and administrators are not liable to costs unless they are guilty of
   a violation of duty.
Where the demand of the claimant is *reduced* by the referees, or a set off *al-
   lowed* which the claimant would not allow, the resistance would not be deem-
   ed unreasonable.

June 7.

MOTION for costs against an *administratrix* on a report of
referees in favor of a creditor, under the revised statutes, rela-
tive to the duties of executors and administrators in the pay-
ment of debts and legacies.   Robert was a creditor of the intes-
tate and demanded a sum as due to him exceeding $200.   The
matter in controversy was referred to three disinterested per-
sons, in conformity to the provisions of the statutes, 2 R. S.
88, § 36.   The referees, after hearing the parties, made a report
in favor of the creditor or claimant for $76,07.   Within a few
days after the making of the report, the administratrix tender-
ed the amount so reported to the claimant, who refused to re-
ceive the same unless the *costs of the reference* were also paid,

which the administratrix refusing to pay, a rule for costs was now asked of this court. The evidence in relation to the *resistance* and *neglect* to pay is stated in the opinion of the chief justice.

*M. T. Reynolds,* for the motion.

*J. A. Lott,* contra.

*By the Court,* Savage, C. J. The revised statutes, 2 R. S. 88, 89, and 90, have materially changed the law of this state in relation to the duties and liabilities of executors and administrators. Under our former statutes, suits were brought against them at any time after they undertook to act in their representative capacity, with a right on the part of the creditors to the costs of suit in case of a recovery against them, provided there were sufficient assets in their hands. But under the revised statutes, 2 R. S. 90, § 41, there can be no doubt that in case of *suits,* properly so called, no costs can be recovered against them, unless it shall appear that the demand was presented within the time limited ; that its payment was unreasonably resisted or neglected, or that the defendant refused to refer the same according to previous provisions.

Were this motion made in a " *suit at law*" properly so called, the plaintiff clearly could not be entitled to costs without shewing affirmatively the default of the defendant in one of the above particulars. The proceeding, however, in which this motion is made is not technically a suit at law, but it is a *reference* under the provisions of the statutes relative to the duties of executors and administrators in the payment of debts and legacies. By the 34th section, executors and administrators are to give notice to the creditors of the deceased, requiring them to exhibit their claims with the vouchers thereof, to such executor or administrator at his residence or place of business. By the common law, it is the business of the debtor to seek the creditor and offer payment, but by this statute the creditor is to seek the representative of the debtor, and produce the vouchers shewing the validity of the claim which he presents. By the 35th section, the executor or administrator may re-

quire satisfactory vouchers not only, but also the affidavit of the claimant that such claim is justly due, that no payments have been made, and that there are no off-sets to his knowledge ; but all this is not conclusive upon the executor or administrator ; if he doubt the justice of any claim, he may enter into an agreement to refer the same to referees, who are to be approved by the surrogate, and upon filing such agreement in the office of a clerk of the supreme court or a court of common pleas, a rule shall be entered referring the matters in controversy to such referees. The 37th section directs that the referees shall thereupon proceed in the same manner in all respects, shall have the same powers, receive the same compensation, and be subject to the same control, as if the reference had been made in an action in which the court might direct a reference ; the court may set aside the report of the referees or confirm the same, *and adjudge costs as in actions against executors* and the judgment of the court thereupon shall be valid and effectual in all respects as if the same had been rendered in a suit commenced by the ordinary process. By section 38, every claim presented to the executor and rejected by him, must be prosecuted within six months, if then due ; if not, then within six months after some part or the whole shall become due, or the plaintiff cannot recover at all. By section 39 if a debt shall not be presented within six months after the executor's notice, the executor may pay debts of an inferior degree, or legacies, without being chargeable for such application of the assets in his hands; and by section 40, the plaintiff shall recover only to the amount of such assets in the executor's hands at the commencement of his suit ; by section 41, no costs shall be recovered in such suit, and then follows the general provision already referred to, that no cost shall be recovered in any *suit at law,* unless the executor or administrator had unreasonably resisted or neglected payment, or had refused to refer the same according to the previous provisions.

.In this case the demand of the plaintiff was presented in due season ; the defendant, however, doubted the justice of it, and thereupon agreed to refer it. The plaintiff obtained a report in his favor, and now claims the costs of the reference and subsequent proceedings.

This statute seems to consider an executor or administrator not merely as the representative of a deceased debtor, but as a trustee of a fund which he holds for the benefit of the creditors of the deceased. Hence the creditors are to present their claims at the residence or place of business of the trustee; not only so, but they must exhibit their vouchers; and even after satisfactory vouchers have been exhibited, the trustee may require the affidavit of the claimant; and after all this, he may submit the account to referees. In all these proceedings, he is not considered as a defaulting debtor, who is to be punished with costs for omitting to pay the debts of the person represented by him, but rather as a person entrusted with a fund to be distributed according to law. When the creditor has presented his claims, substantiated by vouchers and his own affidavit, the executor is justified in withholding payment, if he doubt the justice of the claim. If the creditor prosecute on this state of facts, and prevail, he cannot recover costs, the executor not being in default. If, instead of *prosecuting*, the creditor ask a *reference* of the matter in controversy, and it is referred accordingly, and the referees report in favor of the creditor, there is no reason in the nature of the transaction, nor growing out of the policy of the statute, why costs should be given in one case and withheld in the other; both proceedings are suits at law, *in effect;* for though no process issues in one case, nor are there any formal pleadings, yet there must be something shewing the matter in controversy. There must be an agreement in writing, filed, as the foundation of the rule to refer; there must be a report, and that report must be confirmed; there must be a judgment entered thereon, and costs are to be adjudged as in actions against executors; and I apprehend there should be a record of these proceedings which may be necessary for the security of the executor, to enable him to plead payment of the amount, to sustain a plea of *plene administravit* in a subsequent suit. The proceeding before referees is therefore substantially a suit; it is a legal proceeding in a court to ascertain the amount due, and to enforce its collection. The judgment is to be valid and effectual in all respects, as if rendered in a suit by the ordinary process; it will therefore authorize an execution. By section 32, no ex-

ALBANY,
June, 1832.

Robert
v.
Ditmas.

ecution shall issue upon a judgment against an executor or administrator, until an account of his administration shall have been rendered and settled, or unless on an order of the surrogate who appointed him. But I perceive no difference between the proceeding by way of reference and by way of suit, only that in the latter case process issues; in the former, the agreement of the parties supplies the place of process and of pleadings. There is no reason, therefore, why costs should be recoverable in one case and not in the other, unless the statute has made the distinction.

By the 37th section, the court who confirm the report of the referees, may adjudge costs as in actions against executors. How does the court adjudge costs against executors? In what manner, and under what circumstances? I find no answer to these questions in the statute, except in the 41st section. There the court are authorised to direct the costs to be levied of the property of the defendants, or of the deceased, as shall be just, and the cases in which costs shall be adjudged at all, are those in which payment was unreasonably resisted or neglected, or where the defendant refused to refer. If this rule is applicable to a reference, the defendant is not liable for costs, only where payment has been unreasonably resisted or neglected. It cannot be denied that this statute is the only authority for giving costs at all, unless it be found in page 618, § 37, which directs the form of the judgments in *suits* against executors and administrators. If the statute had been silent on the subject of costs, none could have been recovered in any case; they must therefore be limited to those cases where they are given by the statute, and under the circumstances there mentioned.

In opposition to this view of the statute, it is argued, that the object of the legislature was to induce creditors to settle such demands in a cheap and expeditious manner, and that they can have no such inducement if they stand on the same footing with respect to costs as if they brought a suit. The legislature, no doubt, supposed that a reference in the manner provided would be less expensive and more expeditious than a suit in the ordinary form, and it seems to me there is an inducement to the creditor, on that account, to adopt this mode, be-

cause the costs are less. If he must pay his own costs at all events, he will choose that form where the costs will be least and the expedition greatest. The inducement would certainly be greater, if, on reference, he were to recover costs, and not in a suit; but still, if the costs are less, there is a sufficient inducement.

It is also argued that the language in the 41st section applies solely to *suits at law*. This is true; but the 37th section directs that upon reference, the court may *adjudge costs as in action against executors;* this seems to me to apply the same rule to both cases. It is indeed difficult upon this view of the case to see why the legislature should in the 41st section make a refusal to refer one ground of charging the defendant with costs, unless it is considered evidence of an intention unreasonably to resist payment; but it is not our business to make law, or to penetrate, in all cases, into the reasons which operated upon the legislature; when we can see the object in view, that will always aid in giving a construction to what appears obscure. The words *suits* and *actions,* as here used, are certainly synonymous; if we substitute the word *suits* in the 37th section, then costs upon reference are to be adjudged *as in suits* against executors, and the question recurs, how are costs adjudged against executors? The plaintiff says they are adjudged against them either *de bonis testatoris* or *de bonis propriis.* The 41st section says they are to be adjudged when payment has been unreasonably resisted or delayed, or there has been a refusal to refer, in which cases the court may direct them to be levied of the property of the *executor* or of the deceased, *de bonis propriis or testatoris,* as shall be just according to the facts appearing upon the trial. The argument against this construction, arising from the injustice and inconvenience to creditors, should certainly have great weight if addressed to the legislature, but seems applicable to the 41st section equally with the construction given to the 37th. I confess I can see no reason why a creditor should be compelled to prosecute an executor or administrator at his own expense, when the estate is sufficient to pay the costs, unless it is, that the executor or administrator is, as I have already observed this statute seems to consider him, not the representative of a defaulting debtor, but the trustee of a fund held by him, and to be dis-

tributed by him to those who substantiate their claims; and then there is no good reason why the fund should not pay the costs of the necessary investigation to substantiate the claims against it, if the fund be sufficient for that purpose. We, however, are to declare what the law is, not what it should be.

I am next to consider whether the defendant has unreasonably resisted or neglected payment of the plaintiff's demand, and is therefore liable to costs. What acts would amount to an unreasonable resistance, or what omission to pay would amount to an unreasonable neglect, must necessarily depend upon the facts of the particular case. The cases of *Potter* v. *Etz*, 5 Wendell, 74, and *Nicholson* v. *Showerman*, 6 id. 554, relate to this subject. In one, after suit commenced, the defendant gave a cognovit, and was held not liable; in the other, the defendant had assets enough in his hands, but refused to pay the plaintiff's demand, saying that the estate was not liable; he contested the suit, and though the plaintiff prevailed, it was held that it did not necessarily follow that it was impropor to have made the defence. Mr. Justice Sutherlands remarks, "for aught that appears, the testimony may have been nicely balanced." From this it may be inferred that had there been in truth no colorable defence, the resistance made would have been unreasonable.

The statute, I apprehend, cannot be construed to subject executors and administrators to costs, unless they are guilty of a violation of duty. If a creditor presents a claim known to be a fair one, and there is property enough to pay it, not liable to pay debts of a higher class, it is the duty of the executor or administrator to pay it, and a refusal to pay, under such circumstances, I think would be unreasonable; but if the executor or administrator doubts the correctness of the claim, the statute provides that not only the vouchers may be required, but also the affidavit of the claimant. If the executor or administrator should still remain unsatisfied, he may resist; and if upon the trial it shall appear that he had good reason for such resistance, it can never be called unreasonable. If, for instance, the plaintiff should fail to substantiate his claim to the amount demanded, or the defendant should succeed in establishing a demand by way of off-set, which the plaintiff

had refused to allow, such defendant could never be charged with unreasonable resistance. The defendant is charged by the plaintiff with unreasonable resistance and neglect; many of the facts stated by the plaintiff and his attorney are denied on the other aside. It is, however, conceded that the plaintiff presented his first account in the month of April, 1830, and the defendant her first account in May, 1830; the plaintiff's second account was delivered in September, 1831, the defendant's second account in November, 1831. The offer to refer was made and accepted in December, 1831. Subsequent to that time there was no delay on the part of the defendant, and when the report was made, payment was promptly offered, which was refused without the costs, and those the defendant refused to pay.

The plaintiff complains of neglect on the part of the defendant, because she or her agent did not seek the witnesses to whom the plaintiff referred them. The defendant's agent states that he offered to allow all such charges as should be substantiated by affidavit. It also appears that the plaintiff claimed upwards of $200, and resisted the claim of $100 for the services of the intestate. The referees allowed the defendant's charge and must have disallowed some of the plaintiff's charges, as the report is only $76. The plaintiff ought not to complain of the unreasonableness of the defendant's claims in relation to the reference, for he acceded to them—and they certainly were not unreasonable as explained by the defendant's affidavits. That resistance was proper, is proved by the result; instead of paying $200 and upwards, the balance is found to be $76. On the whole case, therefore, the defendant is not chargeable with costs.

Motion denied.