WOODIN and others *vs.* BAGLEY, executor, &c.

The *next of kin* cannot maintain an action, or prosecute a claim for a distributive share of the personal property of the deceased, in their *character* of *next of kin ;* letters of administration must be taken out, and suit brought in the name of the *administrator.*

In a *reference under the statute,* on the presentation of a claim to an *executor* for a debt or demand against the estate he represents, the *agreement* to refer must present substantially *the issue between the parties ;* it is a substitute for a declaration and plea.

A material reduction by the executor, of the claim brought against the estate, is such satisfactory evidence that its payment was not unreasonably resisted or neglected, as to exempt the executor from costs.

THE plaintiffs, the children of *Daniel Woodin,* deceased, presented a claim to the defendant, as *executor* of the last will of *Hannah Woodin,* their grand-mother, for a proportion or distributive share of the personal property whereof their grand-father *Peter Woodin* died possessed, and which, on his decease, went into the possession of their grand-mother. The executor doubting the justice of the claim, the parties entered into an agreement, *pursuant to the statute* relative to the duties of executors and administrators, 2 *R. S.* 88, § 36, referring the matter in controversy to three disinterested persons. The agreement stated that the plaintiffs, *as heirs at law* of *Peter Woodin,* deceased, claimed certain property and money, viz. $151 cash, a sorrel horse sold for $30, beds, bedding, tables, chairs, and other articles of household furniture enumerated in an inventory of *Hannah Woodin's* personal property, taken on the 14th February, 1832 ; and that the defendant disputed their title thereto, and denied that they had any right to the property as such heirs ; wherefore the matter in controversy was referred to three individuals selected by the parties. On the hearing before the referees, in 1832, the plaintiffs proved themselves the grand-children of Peter Woodin, who had two sons, one of whom was named *Daniel,* and was the father of the plaintiffs, and died twenty-six years previous to the hearing before the referees. Peter, the *grand-father,* died eighteen years previous to the hearing. It was proved, that

after the death of her husband, Hannah Woodin, his widow, said that she was not left in a destitute situation, as many were ; that she had money left with which to help herself ; that she had $151, which she had let out to Edward Bagley, and had a note for it, which she calculated to have renewed every year ; and from the inventory of her property, taken in 1832, it appeared that, at the time of her decease, she had a note against Bagley for the sum of $151. It was further proved, that Peter Woodin, the grand-father, died possessed of various articles of household furniture, all of which went into the possession of his widow ; and that she sold a horse for $30, and also sold other personal property. In 1807, all the personal property of Peter Woodin, the grand-father, was sold, by virtue of an execution against him, and brought in by one Williams. The property, however, remained in the possession of Woodin, and in December, 1814, after his decease, Williams released the whole of it, except the farming utensils, to the widow, for the consideration of $48. In the same year in which his property was sold, Peter Woodin was discharged as an insolvent debtor ; and in 1814, when he died, he was insolvent. The defendant insisted, before the referees, that the plaintiffs were not entitled to recover, especially in the form of action adopted, and in the manner in which their claim was prosecuted ; and at all events that the statute of limitations was a bar to a recovery. The referees, however, made a report in favor of the plaintiffs for $88 *damages*, and $35,86 *costs*. The defendant moved to set aside the report.

*H. Hogeboom*, for defendant.

*J. A. Spencer*, for plaintiffs.

*By the Court*, SUTHERLAND, J. The reference in this case was made under that provision of the Revised Statutes which authorizes executors or administrators, when they doubt the justice of any claim presented against the estate which they may represent, to enter into an agreement in writing, with the claimant, to refer the matter in controversy to three disinterested persons, to be approved by the surrogate. 2 *R. S.* 88,

§ 36. Such agreement and approval of the surrogate are to
be filed in the office of a clerk of the supreme court, or of the
clerk of the court of common pleas of the county in which
the parties or either of them reside ; and a rule is to be enter-
ed by such clerk, either in vacation or term, referring the mat-
ter in controversy to the persons so selected. The referees are
to proceed, and hear and determine the matter, and make their
report to the court in which the rule for their appointment
shall have been entered. The same proceedings are to be
had in all respects, the referees are to possess the same pow-
ers, and to be subject to the same control, as in cases of refer-
ence in the usual manner ; and the court may confirm or set
aside the report and enter judgment thereon, as in other cases
of reference. § 37.

The statute makes no provision for pleadings in such cases.
The agreement to refer is the commencement of the suit It
must present substantially the issue between the parties, sta-
ting the claim upon one side, and the denial of its justice on
the other ; it is a substitute for declaration and plea. Ques-
tions of some difficulty may yet arise upon the construction
and operation of this statute, but it is not necessary to anti-
cipate them. The agreement to submit, in this case, states
the nature and extent of the plaintiffs' claims, and the *charac-
ter* in which they present them, with as much precision as an
ordinary declaration in assumpsit ; and it contains a general
denial of the justice of those claims, on the part of the defend-
ant. It is to be considered a part of the record, as much as
though it were in form a declaration.

The plaintiffs are some of the heirs at law of Peter Woodin
deceased, being the sons and son-in-law of his deceased son
Daniel Woodin. The defendant Bagley is the executor of
Hannah Woodin, the widow of Peter ; and the plaintiffs al-
lege that Peter Woodin died in possession of certain personal
property, which, at his death, went into the possession of his
widow, and remained in her possession, with the exception of
some articles which she sold, until her death in 1832, when
they came to the defendant as her executor. The plaintiffs,
*as heirs at law* of Peter Woodin, claim to recover their propor-
tion of this property. The defendant contends that *in that*

NEW YORK,
May, 1835.

Woodin
v.
Bagley.

*character* they cannot maintain the action : that letters of administration should have been taken out upon Peter Woodin's estate, and the action brought in the name of the administrator. The right of the plaintiffs' whatever it is, accrued immediately upon the death of Peter Woodin, their grand-father ; one third of his personal estate belonged to his widow, and the other two thirds to his personal representatives as tenants in common, subject to the payment of the intestate's debts. If the widow took possession of the whole, it will not be pretended that the *heirs, as such,* could then have maintained an action against her in any form for their proportion. *As heirs,* they are not entitled to the personal property of their ancestor ; it goes to his personal representatives, who in judgment of law, are entirely distinct from their heirs. They are not liable to the creditors of the estate, as heirs, in respect to the *personalty,* although they should take possession of it,and convert it to their own use ; they must be proceeded against as intermeddlers with the estate and wrongdoers, precisely as though they were strangers to the intestate. The debts due to the estate cannot be collected in the name of the heirs or next of kin ; they cannot, in that character, even sustain a suit in equity for the recovery of personal property belonging to the intestate, although exclusively entitled to the beneficial interest therein ; they must take out letters of administration,and sue in that capacity. A husband cannot collect the debts due to his wife, although they may belong exclusively to him, except as administrator upon her estate. *Jenkins and others* v. *Fryer and others,4 Paige,47,and the cases there referred to.*

If the plaintiffs could not have maintained this action in its present form, immediately after the death of Peter Woodin, can the time which has since elapsed have increased or changed their powers or rights in this respect ? It can have this effect only by raising the presumption that all the debts due from the estate have been paid, and that whatever of the personalty remains, belongs to the next of kin, free and discharged from all claims upon it. But admitting this to be a legitimate conclusion from the lapse of time, the formal objection still remains—that the personalty can be recovered only in the name of the administrator or other personal representa-

tive.    This precise point was decided by the chancellor in
*Champenois* v. *Champenois*, referred to by him in *Jenkins* v.
*Fryer*, 4 *Paige*, 51, where he held that the children of a lega-
tee were not entitled to recover the legacy without administer-
ing upon the estate of their father, *although it was admitted
that there was no debts due from the deceased legatee,*and that
the taking out of letters of administration was a mere formal
proceeding.    *Vide also* 4 *Litt. R.* 264.    But in this case the
presumption that there were no debts of the intestate remain-
ing unpaid, is rebutted by the fact which was proved in the
case, that he died insolvent and unable to pay his debts.    In
*Hyde* v. *Stone*, 7 *Wendell*, 354, an action of *trover* was sus-
tained in favor of a son for personal property left by his father,
without administration having been granted.    But in that
case the defendant had expressly admitted the right of the
plaintiff, and had offered to give him the possession of the
property ; and it was remarked by the court, that after that,
he ought not to be permitted to object that he was responsible
only to the administrator of the estate of the plaintiff's father,
and not to the plaintiff himself, who is the only person bene-
ficially interested in the estate.    *Page* 358.    It is like the case
of an express promise to pay the assignee of a chose in action
upon which an action may be maintained by the assignee, in
his own name.    That case admits the general principle, and
is taken out of it by its special circumstances.    This objection
is fatal to the action, and it is unnecessary to consider the oth-
er grounds upon which the report is sought to be set aside.

The report is certainly erroneous in charging the defend-
ant with costs.    He reduced materially the plaintiffs' claim,
which is satisfactory evidence that there was nothing unrea-
sonable in his refusal or neglect to pay the demand ; and, in
such cases, an executor or administrator is not liable for
costs. 2 *R. S.* 90. 5 *Wendell,* 74. 6 *id.* 554.    *Robert* v. *Dit-
mas, 7 Wendell,* 522.

The statute of limitations, I apprehend, might also be ef-
fectually interposed against the claim.

Report of referees set aside.