By the Court,
Bronson, J.
Three questions are presented for our consideration: 1. Was this a case where notice might be well- served by mail? 2. Was the endorser discharged in consequence of the misdirection of the notice to the North Adams, instead of the Appling post office? and 3. Was the judge right upon the question growing out of the form of the notice. •
The rule formerly was, that notice of the dishonor of a bill or note must be served personally on the drawer or endorser, or be left at his dwelling house or place of business; and that rule still prevails in this country when the party to be charged resides in the same place where the presentment or demand is made. (Ireland v. Kip, 10 John. Rep. 490; and 11 id. 231; Smedes v. Utica Bank, 20 id. 372; Louisiana State Bank v. Rowell, 6 Martin's Lou. Rep. N. S. 506; Laporte v. Landry, 5 id. 359; Clay v. Oakley, id. 137; Shepard v. Hall, 1 Conn. Rep. 329; see also- Hartford Bank v. Stedman, 3 id. 489; Bank of Columbia v. Lawrence, 1 Peters, 578.) But where the drawer or endorser resides in a different place from that in which the presentment or demand is made, the old rule, which required personal service, has been relaxed, and it is now well settled that notice may be sent by mail. The only difficulty arises from the fact that the defendant resided in- the same town, though at the distance of seven miles from the bank where the note was made payable. In Ireland v. Kip, the endorser resided at Kip’s Bay, within the corporate limits of the city of New-York where the demand was made, but at the distance of three *591 and a half miles from the New-York post office, where he received his letters. There was no post office at Kip’s Bay, and notice left at the city post office was held not to be sufficient. The service should have been personal, or by leaving the notice at the endorser’s dwelling house or place of business. The rule laid down in that case has never been, and should not be applied, without some qualification, to our large country towns, which often have more than one post office, or where, if they have but one, a portion of the inhabitants live so far from it that they usually receive their letters and papers through a neighboring office in another town. Notice may, I think, always be sent through the post office, wherever there is a regular communication by mail between the place of presentment or demand, and the office where the person to be charged usually receives his letters and papers. In Ireland v. Kip, the notice was not left in the New-York office to be transmitted by post to another office, but to remain there until called for; and such was also the case in all the other instances where that mode of service has been held to be insufficient. In Laporte v. Landry, it was said by Martin, J. that the post office was not a legal place of deposite for notices; but that servicein that mode was sufficient “ where notice may be conveyed by mail.” And in Louisiana State Bank v. Rowell, the rule was laid down by Porter, J. that mail service is good “ when the endorsers live at such a distance that their residence is nearer another post office than that where the holder lives.” The corporate limits of our cities and towns have, I think, less to do with this question than the mail arrangements of the general government, and the business relations of our citizens. Whether mail service is good or not, does not depend upon the enquiry whether the person to be charged resides within the same legal district; but upon the question whether the notice may be transmitted by mail from the place of presentment or demand to another post office where the drawer or endorser usually receives his letters and papers. In this case, although the defendant lived in *592 the same town, where the demand was made, and there was but one post office in that town; yet as he lived remote from the Sacketts Harbor office, and there was another office in his vicinity to which he usually resorted for letters and papers, there can, I think, be no doubt that notice might have been well served by mail.
The next enquiry is, whether the defendant was discharged in consequence of the misdirection of the notice. It was sent to the North Adams, when it should have been sent to the Appling office. The defendant’s place of residence not being known, the notary made enquiry of Robbins, the second endorser, who professed to be able to give the necessary information, and was interested to speak truly. The answer of Robbins was, that the notice should be sent to North Adams—that being the office where the defendant got his letters and papers. Although Robbins was mistaken, the notary was well warranted in acting upon information thus obtained, without pushing his enquiries further. There was due diligence, and that is enough. (Bank of Utica v. Bender, 21 Wend. 643.) That case was affirmed on error brought in June, 1841. Drawers and endorsers can easily prevent mistakes of this kind, by writing under their names their place of residence or the place where they desire notice should be sent in case the bill or note is protested.
^The remaining question relates to the time of demand and the form of the notice. As the last of the usual days of grace fell on the fourth of July, which is a public holiday, the only available demand of payment was that made on the third day of that month. (Cuyler v. Stevens, 4 Wend. 566.) The notice to the defendant, as it was finally deposited in the post office, was dated on the fourth day of July; and stated, among other things, that payment of the note had been that day demanded. The circuit judge thought this was notice that the endorser was discharged, but under a decision of this court he felt bound to submit it to the jury as a question of fact to say whether the defendant had been misled; and he accordingly instructed the jury that the *593 notice was sufficient if the defendant had not been misled. The case of The Ontario Bank v. Petrie, (13 Wend. 456,) is undoubtedly the one to which the learned judge alluded ; and it must be admitted that it is in point. In that case, the bill fell due and payment was demanded on the thirtieth of August. The notice to the endorser was dated the same day, and stated that the bill was last evening protested for nonpayment. It was left to the jury to say, whether the endorser had been misled by the notice, and a verdict having been found against him, a new trial was denied. The only difference between that case and this is, that there the notice stated the protest to have been made one day too soon; and here the notice states the demand to have been made one day too late. In either case, if the protest or demand had in fact been made at the time mentioned in the notice, the endorser would have been discharged ; and, as an original question, I think he was discharged. Assuming as we must that he knew the law when he read the notice, he had a right to say—“ The presentment was not made at the proper time, and I am consequently under no liability to the holder. I am not legally called upon to take up the paper, and need not trouble myself about looking to the prior parties for an indemnity.” But, notwithstanding my own opinion, I should feel bound to follow the case of the Ontario Bank v. Petrie, if it had not been shaken by the recent decision of the court for the correction of errors in Remer v. Downer, (23 Wend. 620.) That case has rendered it necessary to consider this question upon principle.
No particular form of words is necessary in giving notice to the drawer or endorser. It is sufficient if he is informed that the bill or note has been dishonored, and that the holder looks to him for payment. Indeed, it does not seem necessary to inform the drawer or endorser that he is looked to for payment; for he can understand nothing less than that, from the fact that the holder gives him notice that the paper has been dishonored. (Bank United States v. Carneal, 2 Peters, 543; 3 *594 Kent’s Com. 108, 4th ed.; Chitty on Bills, 501, ed. of ’39.) But notice that the bill or note has been dishonored, is indispensable. In Hartley v. Case, (4 Barn. & Cress. 339,) the holder wrote to the drawer on the day the bill fell due, calling on him for payment, and threatening legal proceedings if he omitted to take up the bill. The court of K. B. held the notice insufficient, because it did not inform the drawer that payment of the bill had been refused by the acceptor. This question was also decided the same way by the house of lords, after having been carried through all the other courts, in Solarte v. Palmer, (7 Bing. N. C. 194;) and the plaintiff in error was adjudged to pay about sixteen hundred dollars costs, on the ground that the case was too clear for an appeal. (And see Strange v. Price, 2 Perry Dav. 278.) In the case at bar, the notice was more defective than though it had wholly omitted to state a presentment at the bank where the note was made payable; for although the defendant was informed that a demand had been made, he was also informed that it was made on the wrong day. If the notice had been that the note was duly presented, or if nothing had been said about presentment, the defendant might have inferred that a demand had been made át a proper time. But he was told that the holder relied on a demand which was utterly void; and instead of taking up the note and looking to the maker, he had a right to consider himself discharged.
There have been several cases where, upon a misdescription of the bill or note in the notice, it has been left to the jury to pass upon the question of identity, and say whether the drawer or endorser had been misled. (Reedy v. Seixas, 2 John. Cas. 337; Bank of Rochester v. Gould, 9 Wend. 279; Smith v. Whiting, 12 Mass. Rep. 6.) These cases were followed by this court on one branch of the case of Downer v. Remer, (21 Wend. 10.) But the reversal of that judgment by the court of errors has greatly shaken, if it has not absolutely overturned those decisions. The court seems to have proceeded upon the ground, that the sufficiency of the notice was a question of law, about which .the jury had nothing to say. (23 Wend. 670.) It ap *595 pears, however, that such was not the opinion of all the members of court, as will be seen by a post mortem examination of that case which may be found in 25 Wendell, 277. Still I think it most safe to conclude that a majority of the members acted upon the opinion of the Chancellor, which was delivered at the time the decision was made.
Most of the questions which can arise upon the liability of drawers and endorsers, where all the facts are ascertained, have been held to be questions of law to be settled by the court. This has been thought necessary for the purpose of having fixed and uniform roles of decision in relation to these commercial transactions. If such questions are to be submitted to a jury, a party may be discharged to-day and be made liable to-morrow upon the very same state of facts. The cases which have been mentioned are the only ones I have met with where it has been left to the jury to pass upon the sufficiency of a written notice, and say whether the drawer or endorser had been misled. There are other cases where the like question has been disposed of by the court as a question of law. (Mills v. Bank U. S., 11 Wheat. 431; Bank of Alexandria v. Swann, 9 Peters, 23; Beauchamp v. Cash, Dowl. & Ry. N. P. Cas. 3.) And since the decision of the court of errors in Remer v. Downer, it must, I think, be regarded as a settled question, that the sufficiency of the notice should be determined by the court, where there is no dispute about the facts upon which the question turns.
If it should not be left to the jury to determine whether the endorser has been misled by a misdescription of the note, then most clearly it should not be left to them to say whether the endorser had been well charged by a notice which informed him that the demand had been made on the wrong day. That was a mere question of law, without any admixture of matter of fact for the consideration of the jury. The case of the Ontario Bank v. Petrie cannot be supported, and the verdict must consequently be set aside.
New trial granted.