In the Matter of the Estate of BARNEY LINK, Deceased.

Surrogate's Court, Kings County, February 5, 1940.

*Wrenn & Schmid,* for the Kings County Trust Company, surviving trustee, petitioner.

*Mattuck & Mattuck,* for Kerwin H. Fulton, surviving trustee, petitioner.

*Edwin C. Mulligan,* for Thomas J. Tobin and Claudine Tobin, as executors, etc., of Annie Link, deceased, petitioners.

*William E. Beehan* [*Benjamin H. Trask* and *Joseph A. Beehan* of counsel], for Edith L. Salter, objectant.

*James S. Regan,* special guardian for Ruth M. J. Stoik, infant respondent.

*K. C. Bates,* for Oluf Sturcke, objectant.

*Conboy, Hewitt, O'Brien & Boardman,* for Laura C. Birkholz and others, objectants.

*Visel & McDermott,* for John B. Lebeis, respondent.

WINGATE, S.  This is a proceeding for the judicial settlement of the accounts of the surviving trustees under the will of this decedent and of the executors of Annie Link, widow of the testator, for her acts as trustee, prior to her decease.

Only two questions are presented for determination.  Both relate to the identity of the distributees of portions of the funds now presently distributable.  The first concerns the sums primarily attributable to Philip Link and the second to those due Annie Link.

Philip Link is a brother of the deceased. Under the terms of the will, as construed by the decree of this court dated December 21, 1927, there was determined to be due him one-nineteenth of sixty-five per cent of the income of the trust and, by reason of his survivorship of Annie Link, one-nineteenth of the principal is now vested in him.

In 1920 he made an assignment of his entire interest to a certain John J. Weiner. In November, 1927, he retained Louis Sturcke to represent his rights in the estate, the main purpose sought being to set aside the Weiner assignment. Under date of November 23, 1927, he signed a contingent retainer agreement with Mr. Sturcke which, after reciting the employment of the latter, provided: " and in consideration of such services to be rendered by him, I promise to pay him one-third of whatever he shall succeed in obtaining for me out of said estate, either by way of income or principal."

Mr. Sturcke was successful in his efforts and procured a reassignment by Weiner to his client of the latter's former interest in the estate. It was demonstrated on the hearing that Mr. Link subsequently recognized his obligation to Mr. Sturcke and currently paid him one-third of sums received by him from the estate.

Mr. Sturcke has now died and his estate has asserted a right to payment of one-third of the sums which may now be found due to Mr. Link. The latter, although cited in this proceeding and apprised of the claim made against his distributive interest, has defaulted in appearance.

On the record demonstration it appears entirely obvious that Mr. Sturcke and his estate possess an unquestionable right to receive from Mr. Link one-third of all sums which may be obtained by him from this interest. A serious question exists, however, as to whether this court possesses the power so to decree in the present proceeding.

Such authority is asserted by the representative of Mr. Sturcke's estate on the theory that the retainer agreement effected an equitable assignment of one-third of all sums which might thereafter be payable by the estate to Mr. Link. His legal reliance for the substantiation of this assertion is predicated on three decisions. The first is *Bennett* v. *Donovan* (83 App. Div. 95). This was an action in the Supreme Court against an executrix to compel her to account for moneys received from another estate and to pay over to plaintiff twenty-five per cent thereof. Her decedent had agreed with plaintiff's legal firm to " pay him for his services 25 percent. or one-quarter of any sum or sums of money that may be received by them or any of them in settlement of the claim as heirs-at-law." The court held that this agreement effected an equitable assignment of the indicated percentage of the fund.

The retainer agreement adjudicated in *Fairbanks* v. *Sargent* (104 N. Y. 108, 113), which is the second authority cited, provided that the attorney " is to have one-sixth of whatever amount of money, securities, or property shall be received on account of such claims as shall be settled without suit, and one-third of whatever amount * * * shall be put in suit." The court, whereas determining that the agreement effected an equitable assignment (p. 116), observed (at p. 117): " It is also important to notice that this contract does not contain a provision by Underwood to pay plaintiff from the fund produced, or otherwise, but is an engagement that plaintiff shall have one-third of the proceeds of the collections in specie, or in such form as they shall be received from the debtor."

The final authority cited, which is *Deering* v. *Schreyer* (171 N. Y. 451), does not go beyond the decision last reviewed. In this case the client executed a retainer which provided: " And in consideration of his professional services [I] do hereby promise, *assign* and agree to pay to the said Deering a sum equal to fifty percent of whatever sum shall be allowed." (Italics supplied.) This was determined to effect an equitable assignment.

Whether or not a given instrument may be deemed to effect an equitable assignment of a portion of a claim depends on the terms of the individual agreement. " The test of an equitable assignment is the inquiry whether or not an assignment makes an appropriation of the fund so that the debtor would be justified in paying the debt or the assigned part to the person claiming to be the assignee." (*Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179, 183. See, also, *Fairbanks* v. *Sargent*, 117 id. 320, 330.)

" To constitute a valid assignment there must be a perfected transaction between the parties intended to vest in the assignee a present right in the thing assigned. An agreement to pay a certain sum out of, or that one is entitled to receive, from a designated fund, when received, does not operate as a legal or equitable assignment, since the assignor in either case retains control over the subject-matter." (*Donovan* v. *Middlebrook*, 95 App. Div. 365, 367.)

" An equitable assignment does not exist where an assignor retains any control over the fund, or any authority to collect, or any power to revoke." (*Farmers' Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, 362.)

*Fairbanks* v. *Sargent* (*supra*) and *Deering* v. *Schreyer* (*supra*), cited by the claimant, are strictly consonant with these rules. In the former the agreement provided that the attorney " is to have " a specified percentage of the recovery itself. Indeed, the court, as noted, went to some pains to distinguish such an instrument from

one in which intervention by the obligor was to take place in the effecting of the compensation. In the latter case the instrument, as indicated by the word previously italicized, effected an express assignment of a percentage of the claim.

This court is frankly unable to distinguish the decision in *Bennett* v. *Donovan* (*supra*) from the present situation. In view, however, of the overwhelming weight of contrary authority and the fact that the tribunal which enunciated it unanimously affirmed *on the opinion of this court* (*Matter of Leverich*, 135 Misc. 774, 783; affd., 234 App. Div. 625) a decision which rejected a contention of equitable assignment under a document much more favorable than the present, this court cannot deem the *Bennett* case a controlling authority.

In the present case Mr. Link expressly stated: " *I promise to pay him* one-third of whatever he shall succeed in obtaining for me." This was not " a perfected transaction between the parties." It made no " appropriation of the fund so that the debtor would be justified in paying the assignee." It was, on the contrary, merely an agreement by Mr. Link to pay a specified sum from a particular fund when received, which inevitably implied that he, and not the asserted assignee, was to receive it in the first instance.

Whereas, therefore, this court is unable to vindicate the rights of Mr. Sturcke's estate in the present proceeding, this fact does not leave it without remedy. His retainer by this distributee stands unchallenged on the record with the result that he possesses a charging lien upon the interest of his client in this estate for any sums which may be due him. (Judiciary Law, § 475; *Matter of Abruzzo*, 139 Misc. 559, 562; *Matter of Jaffe*, 162 id. 877, 878.) It follows, since the trustees have notice of this claim, that, prior to its satisfaction, they can make any payment to Mr. Link only at their peril. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, 501; *Sargent* v. *McLeod*, 209 id. 360, 365; *Matter of Jaffe*, 162 Misc. 877, 880.)

Mr. Sturcke's executrix possesses alternative remedies for the establishment and enforcement of her rights. She may proceed in a court of general jurisdiction predicating her right to recovery on the express terms of the retainer agreement or she may institute a proceeding in this court against Mr. Link under the provisions of section 231-a of the Surrogate's Court Act. Here, however, direct recovery under the agreement would be impossible, since Surrogates' Courts have been accorded no authority for the interpretation or enforcement of *inter vivos* contracts. (*Matter of Gilman*, 251 N. Y. 265, 271; *Matter of Meng*, 227 id. 264, 269; *Matter of Hoffman*, 136 App. Div. 516, 519; *Matter of Geller*, 167 Misc. 578, 579.)

Her only recovery here would be for the reasonable value of the services rendered, in the establishment of which the retainer agreement would be merely pertinent evidence, in the nature of an advance stipulation on the subject, which, like any other evidentiary admission, would possess more or less cogency depending on the other facts which might be developed at the trial. (*Matter of Dugan*, 147 Misc. 776, 781; *Matter of Post*, 155 id. 389, 390; *Matter of Lessig*, 165 id. 706, 709; *Matter of Geller*, 167 id. 578, 579.)

The objections of Oluf Sturcke, as executrix of Louis Sturcke, deceased, will accordingly be overruled, without costs and without prejudice to the institution of such action or proceeding for the establishment and enforcement of the lien upon the distributive share of Philip Link as she may be advised to institute.

The remaining question for decision is raised by the objections of Edith L. Salter. The basis of these objections is naive and unprecedented in the extreme. It is in substance that the account states that various sums by way of distribution and commissions are due to the deceased life beneficiary and cotrustee, Annie Link, and fails to state that they are due to the objectress.

In attempted substantiation of her objections she has alleged and demonstrated that the will of Annie Link was admitted to probate in the Surrogate's Court of New York county on November 13, 1935, and that the " Fourth " item of this will reads: " All the rest, residue and remainder of my estate, wheresoever situate, including all income or interest in the estate of my deceased husband, Bernard Link, to my beloved niece, Edith L. Salter, of Haynes Farm, Partridge Green, Sussex, England, to her own use, absolutely."

It is her contention that this direction of this New York county will should be construed as making a specific bequest to her of all interests of this New York county decedent in the estate in this court and that she is entitled to receive distribution direct from these accounting trustees without the intervention of the executors of her estate who have been duly appointed in New York county.

Many reasons suggest themselves why these objections possess no legal validity. Notation of a few of their number will suffice.

The basic and indispensable premise of the syllogism upon which the objections are predicated is that the noted language in the New York county will effects a specific bequest. It follows that, before the verity of this premise is capable of establishment, the construction and effect of this will, probated in New York county, would be necessary of determination by this court. Any given surrogate, however, is accorded authority to make such determinations only in respect of wills " proved in his court." (Surr. Ct. Act, § 40; see, also, § 145.) This will was proved in the Surrogate's

Court of New York county, wherefore, a surrogate of that county possesses exclusive jurisdiction to adjudicate its validity, construction and effect.

Under section 202 of the Surrogate's Court Act, the sums due from this estate are deemed assets of the estate of Annie Link " and go to the executors or administrators, to be applied and distributed as part of the personal property of the testator or intestate, and be included in the inventory." (*Flynn* v. *McDermott*, 183 N. Y. 62, 67; *Sterrit* v. *Lee*, 44 App. Div. 619, 620; *Berkeley* v. *Kennedy*, 62 id. 609; *Walter* v. *Walter*, 60 Misc. 383, 393; affd., 133 App. Div. 893; affd., 197 N. Y. 606.) They may consequently be pursued by them and by no one else. (*Woodin* v. *Bagley*, 13 Wend. 453, 456; *Jenkins* v. *Freyer*, 4 Paige, 47, 51; *Palmer* v. *Green*, 63 Hun, 6, 7; *Clason* v. *Lawrence*, 3 Edw. Ch. *48, *53-*54; *Matter of Hart*, 105 Misc. 290, 292; *Matter of Redfield*, 94 id. 20, 24.)

This rule is not varied even in those cases in which an item of property is specifically bequeathed. " It is * * * the duty of the executor to inventory property specifically bequeathed to the end that it may be appraised and resorted to, if necessary, for the payment of debts and the expenses of administration and the payment of any legacies having priority, and in order that any transfer tax thereon may be paid; but unless it be needed for one of those purposes the executor is under no obligation to take possession of such property or to deliver the same to the legatee to whom the title has already passed, subject only to this right of the executor * * * he is at liberty to deliver a specific legacy, other than securities representing money, at any time in his discretion and may require a bond for the protection of the estate in the event that it should be necessary to resort thereto." (*Matter of Columbia Trust Co.*, 186 App. Div. 377, 380.) " The executor * * * has the right to reduce it to possession, and may hold it during the year after the letters are issued and until it is apparent that it is not necessary to use it for the payment of debts and the expenses of administration." (*Matter of Utica Trust & Deposit Co.*, 148 App. Div. 525, 527, 528.)

Obviously, since the obligation is imposed by law upon the executor to pay all administration and funeral expenses and debts before making any distributive payments of any nature whatsoever (*Matter of Smallman*, 138 Misc. 889, 892; *Matter of Tailer*, 147 App. Div. 741, 747), a failure by him to reduce to possession specifically bequeathed property, would be at his peril. In view of this fact, no court would subject him to potential personal liability by denying his right to the custody of such property in the absence of a convincing demonstration that all possible prior obligations had been paid.

In the present instance the record is devoid of such a showing; indeed, the executors of Annie Link have asserted the contrary to be the fact and have attributed the fervent desire of the objectress to short circuit the Surrogate's Court of New York county to her apprehension that her gift, even if determined to be specific, will be seriously impaired by reason of a necessity for its contribution to the costs of administration of the Annie Link estate.

However this may be, there is no justification for the adoption of the course which the objectress urges and her objections will be dismissed, with costs.

Proceed in conformity herewith.