BROADCAST MUSIC, INC., Plaintiff,

v.

Perry L. HIRSCH and Marc R. Staenberg, Defendants–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

Nos. 95–56144, 95–56185.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1996.

Decided Jan. 15, 1997.

Joel P. Schiff, Law Offices of Joel P. Schiff; Marc R. Staenberg, Law Offices of Marc R. Staenberg, Los Angeles, CA; Perry L. Hirsch, Dapeer & Hirsch, Los Angeles, CA, for defendants-appellants.

Gary R. Allen and Annette M. Wietecha, Tax Division, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before: FERNANDEZ and HAWKINS, Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge.

The question we decide in this case is whether a federal tax lien takes priority over prior unrecorded assignments of the taxpayer's rights to receive royalty income from the performance of a copyrighted work.

Broadcast Music, Inc. ("BMI") licenses the public performance rights in copyrighted musical compositions. It collects and pays royalties arising from licensed public performances of copyrighted compositions. Ronald Miller is a songwriter to whom BMI paid royalties derived from his compositions. To satisfy debts Miller owed appellants Staenberg and Hirsch, he executed assignments to them in 1989 of future royalties and directed BMI to pay Staenberg and Hirsch directly. Before the debts were satisfied, however, the Internal Revenue Service ("IRS") assessed deficiencies against Miller, and in 1992, 1993 and 1994 the IRS recorded notices of tax liens against his royalty income. The IRS served BMI with notices of levy, whereupon BMI filed this interpleader action to resolve the conflicting claims to Miller's royalty income.

The district court granted the government's motion for summary judgment, holding: (1) while a tax lien is a transfer under the Copyright Act ("the Act"), 17 U.S.C. § 101, the IRS was excused from having to record its liens by 26 U.S.C. § 6323(f)(5); (2) the assignments to Staenberg and Hirsch were subject to the recording rules of the Act; and (3) Staenberg and Hirsch, having failed to record their assignments under the Act, failed to perfect their interests, resulting in the IRS liens' priming their claim. Staenberg and Hirsch appeal from the judgment.

I. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1331. *See Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 489 n. 6 (7th Cir.1994) (priority of tax liens under 26 U.S.C. § 6323 is a federal question). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's grant of summary judgment *de novo*. *Zuill v. Shanahan*, 80 F.3d 1366, 1368 (9th Cir.1996). We must determine whether the evidence, viewed in a light most favorable to the nonmoving parties, presents any genuine issues of material fact and whether the district court correctly applied the law. Summary judgment is proper only if no material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, ___ U.S. ___, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We may affirm on any ground supported by the record. *Reynolds v. County of San Diego*, 84 F.3d 1162, 1166 (9th Cir.1996).

II. APPLICATION OF THE COPYRIGHT ACT

Under the Act, "[a]s between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c)...." 17 U.S.C. § 205(d). Staenberg and Hirsch's assignments were never

---

* Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

recorded with the Copyright Office. The IRS tax liens, however, did not have to be recorded to be perfected. 26 U.S.C. §§ 6322, 6323(f)(5) (stating that a tax lien is perfected upon assessment). Thus, the first question is whether the assignments to Hirsch and to Staenberg were transfers subject to the recordation rules of the Act (i.e., whether they were a "transfer of copyright ownership or other document pertaining to a copyright," 17 U.S.C. § 205(a)). If they were, the failure to record them prevents them from priming the later IRS liens.

The Act defines "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright...." 17 U.S.C. § 101. The assignments on their face did not transfer any interest in a copyright or in any of the exclusive rights comprised in a copyright. *See Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1160 (S.D.N.Y.1996) (an agreement concerning royalties is not a "transfer of copyright ownership" under the Act). Indeed, the government admits as much in its Statement of Genuine Issues in Opposition to Hirsch's Motion for Summary Judgment, where it states that "[t]he Hirsch Assignments are not assignments of copyrights or of interests in copyrights." Although the government made no such admission with respect to Staenberg, it otherwise makes no distinction between the interests of Staenberg and those of Hirsch. Thus, the Staenberg assignment must be treated in the same way as Hirsch's.

■ That Miller may have been a beneficial owner of copyrights, as the government argues, is irrelevant to determining whether a transfer occurred according to sections 101, 201(d), or 205(d) of the Act. *See* 17 U.S.C. §§ 101, 201(d), 205(d) (discussing transfer of ownership). Beneficial ownership arises by virtue of section 501(b) for the purpose of enabling an author or composer to protect his economic interest in a copyright that has been transferred. *See Cortner v. Israel,* 732 F.2d 267, 271 (2d Cir.1984). Beneficial ownership is a standing doctrine that does not determine the scope or substance of rights

under a copyright. Regardless of whether beneficial ownership may somehow have passed to Staenberg and Hirsch, the assignments did not amount to "transfers of copyright ownership."

■ Nor are the assignments "other documents pertaining to a copyright" within the meaning of section 205(a), which defines the scope of potentially recordable documents under the Act. *See* 17 U.S.C. § 205(a). The Copyright Office's regulations define a document pertaining to a copyright as one that "has a direct or indirect relationship to the existence, scope, duration, or identification of a copyright, or to the ownership, division, allocation, licensing, transfer, or exercise of rights under a copyright." 37 C.F.R. § 201.4(a)(2). Assignments of interests in royalties have no relationship to the existence, scope, duration or identification of a copyright, nor to "rights under a copyright." *See* 17 U.S.C. § 106 (listing rights under a copyright). For that reason, and in light of the preceding discussion, we see no basis for finding the assignments to be documents "pertaining to a copyright."

■ The government, citing *In re Peregrine Entertainment, Ltd.,* 116 B.R. 194 (C.D.Cal.1990), further contends that the Staenberg and Hirsch assignments are recordable because they are security interests in a copyright. We need not decide whether the priority rule under section 205(d) is coextensive with the recording provisions of section 205(a). It is sufficient that this case does not involve an assignment of a security interest—there is no evidence that Miller owned a copyright and had a security interest he could assign. Rather, this is a case of outright assignments of a right to receive royalties for the purpose of satisfying a debt. Thus, the rationale for recordation underlying the *Peregrine* case—to provide notice to prospective creditors or purchasers of the copyright who may rely to their detriment on the appearance of ownership of rights under a copyright—is inapposite. It is true, as the government points out, that the document executed by Miller purported to assign a security interest. But that document was the standard form prepared by BMI, which BMI required for all assignments, regardless

of whether they conveyed a security interest. Hirsch, Staenberg, and BMI all insist that the document did not accurately reflect the transaction. The record supports their position and there is no evidence to the contrary. Under New York law, which the parties expressly incorporated in the assignments as determinative of their rights under it, the court looks to the substance of a contract rather than to its form. *See Bostwick–Westbury Corp. v. Commercial Trading Co.*, 94 Misc.2d 401, 404 N.Y.S.2d 968, 971–72 (N.Y.Civ.Ct.1978). Even if the terms of the assignment document were inexact, "no particular words or phrases are required to effect an assignment." *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, 863 F.Supp. 135, 138 (S.D.N.Y.1994). The government's brief describes the transaction accurately when it states that Miller "was simply arranging to pay a debt that he owed to [Staenberg and Hirsch] out of the royalties that BMI would be accruing on [his] behalf."

## III. APPLICATION OF NEW YORK LAW

██ Having concluded that the provisions of the Act do not apply to determining priority among the competing claims, we turn to state law to determine "to what extent the taxpayer had 'property' or 'rights to property' to which [a] tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). As noted, the assignment form specified that the rights of the parties under it shall be determined in accordance with New York law, and none of the parties to this action disputes the choice of law clause. *Cf. Paracor Fin., Inc. v. General Elec. Capital Corp.*, 79 F.3d 878, 891–92 (9th Cir.1996).

The IRS liens attach to "all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C. § 6321. Thus, the question is whether; under New York law, the instruments executed by Miller in favor of Staenberg and Hirsch transferred all of his rights to the future royalties he purported to assign (i.e., whether Miller had anything left to which the liens could attach). The government contends that Miller's assignments were deficient, both

because Miller retained control over the source of the monies and because the BMI assignment forms transferred only security interests.

██ Under New York law, "an assignment occurs only where the assignor retains no control over the funds, no authority to collect and no power to revoke." *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F.Supp. 401, 413 (S.D.N.Y.1994). The government argues that an "agreement to pay a debt out of a designated fund 'does not operate as a legal or equitable assignment since the assignor retains control over the subject matter.'" *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558 (2d Cir. 1976) (citations omitted). But the critical fact in *Miller* was that the assignor "retain[ed] control over the fund or [maintained] authority to collect or [had the] power to revoke." *Id.* Here, in contrast, Miller did not control the royalty payments after executing the assignments, and in those assignments, he expressly "waive[d][his] right to terminate [his] agreement with BMI until [his] loan[s] . . . [were] repaid." The assignments thus constituted irrevocable instructions to pay the specified sums directly to Staenberg and to Hirsch as royalties came into BMI's hands. *Compare In re Link's Will*, 173 Misc. 217, 17 N.Y.S.2d 634, 638 (N.Y.Sur.Ct.1940) (stating that promise to pay out of funds to be received by the assignor insufficient) *with East Side Packing Co. v. Fahy Market*, 24 F.2d 644, 645 (2d Cir.1928) (holding that "[t]here must be a transfer of such a character that the fund holder can safely pay, and is compelled to do so, even though he be forbidden by the assignor"). While Miller retained a residual interest in the excess royalty income over the amounts assigned, he had no control whatever over the amounts he had assigned. A valid assignment exists where, as here, a "document . . . designates that money be paid to a third party [i.e., Hirsch or Staenberg] . . . [and] the document directs the obligor [i.e., BMI] to pay the third party from those specific funds owing to the assignor [i.e., Miller]." *Pro Cardiaco Pronto Socorro Cardiologica S.A.*, 863 F.Supp. at 138.

The government argues that the assignments merely transferred security interests

that were never perfected. But, as noted above, we must look to the substance, not the form of the transaction. Miller made complete assignments of the monies specified in the assignment documents, leaving him without a current vested interest.

## SUMMARY AND CONCLUSION

Because the assignments to Hirsch and to Staenberg were not subject to the Act's recording rules, their failure to record them with the Copyright Office did not leave the assignments unperfected. Because those assignments were complete under New York law, they transferred Miller's interests to Hirsch and to Staenberg before the IRS tax liens could attach.

There being no triable issues of fact remaining, the judgment of the district court is REVERSED, and the case is REMANDED with directions to enter judgment in favor of Hirsch and Staenberg.