LELAND FAIRBANKS, Jr., Appellant, *v.* WINTHROP SARGENT, as executor, etc., Respondent.

Where the owner of a chose in action, after a transfer for a good consideration of an interest therein to one person, assigns and transfers the same to a *bona fide* purchaser with authority to collect, the latter is not entitled to retain the whole proceeds of collection. The first transferee acquires an equitable lien upon the proceeds of collection to the extent of the interest transferred to him: the second transferee takes subject to such lien, and an action is maintainable against him to enforce the same.

As between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected although he has given no notice of such assignment to either the subsequent assignee or the debtor.

One U., being the owner of a claim resting in open account against Z., who disputed his liability, entered into a contract with plaintiff, an attorney, by which, among other things, it was agreed that plaintiff, for his services in endeavoring to collect the claim should, in case suit was brought thereon, have one-third of whatever should be collected or in any way realized thereon. U. retained the right to decide upon the terms and mode of settlement and to name the attorney, in case suit was brought in another State. Plaintiff thereafter, by the direction of U., caused suit to be brought upon the claim in New Jersey, through an attorney selected by U., and while such suit was pending, the latter, by a written assignment, absolute in form, made without plaintiff's assent or knowledge, transferred his interest in the claim to S., at whose request U., agreed to a settlement by authorizing S. to accept certain bonds in satisfaction of the claim. In pursuance of this agreement, U. directed the attorneys in New Jersey to discontinue the suit, and executed a release of all claims against Z., to be delivered to him upon his delivery of the said bonds ; S. executed a a release of all his claims against U. and reassignments of certain other claims held by him also as collateral, which were considered of no value, to be delivered to U., after he should have received and forwarded the bonds to S. The arrangement was consummated, and S. received the bonds in ignorance of any interest of plaintiff in the claim. *Held,* that an action was maintainable on the part of plaintiff to recover one-third of the bonds so received by S., or the value thereof ; that the agreement between plaintiff and U. constituted an equitable assignment and gave plaintiff an equitable lien upon the proceeds of the settlement to the extent of the one-third, and S. took subject to such interest ; that it was not necessary in order to make such assignment or lien valid, that

notice thereof should be given to the debtor; and that the facts that U. reserved the right to name the attorney to bring the suit, and to determine the terms and mode of settlement did not in any manner detract from the validity of the agreement with plaintiff as an equitable assignment

The case of *Bush* v. *Lathrop* (22 N. Y. 535), stands in full force save as modified by subsequent decisions, excluding from the operation of the principles there laid down the case of a purchase in good faith of a non-negotiable instrument from an assignee of the real owner upon whom such owner has conferred, by his assignment, the apparent absolute ownership, where the purchase has been made in reliance upon such apparent ownership.

Also, *held*, that the real nature of the transaction between U. and S. was not a transfer from the former to the latter of the securities received from Z., but that S., in fact and in law, received them from Z.

*It seems*, that even if it could be held that S. received from U. the said bonds, he was not a *bona fide* holder, as they were not acquired by him for a valuable consideration or in the ordinary course of business.

*Fairbanks* v. *Sargent* (39 Hun, 588) reversed.

(Argued December 8, 1886; decided January 18, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made the first Monday of March, 1886, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 39 Hun, 588.)

This action was originally brought against Henry W. Sargent, the present plaintiff's testator, to recover one-third of forty bonds to which one-third interest plaintiff claimed a right as equitable assignee.

The material facts are stated in the opinion.

*A. C. Brown* for appellant. The bonds were non-negotiable. (1 Burrill's Law Dict. [Bills Single and Penal]; 2 id. 470; Bouviers' Law Dict. [Bills Obligatory]; *Farmers & Mech's Bk.* v. *Grenier*, 2 Sergt. & Rawle, 115; *Arnold* v. *R. R. V. U. R. R. Co.*, 5 Duer, 207; *Hodges* v. *Shuler*, 22 N. Y. 114; 1 Pars. on Con. 26; Chit. on Bills, marg. 166; *Clark* v. *Farmer's Woolen Mf'g Co.*, 15 Wend. 256; *Warren* v. *Lynch*, 5 John. 239; *Helfer* v. *Alden*, 3 Min. 332; *Covell* v. *Tradesman's Bk.*, 1 Paige, 131; *Foster* v. *Floyd*, 4

McCord, [S. C.] 159; *Conine* v. *Junction, etc.*, 3 Houst. [Del.] 288; *Hooker* v. *Gallagher*, 6 Fla. 357; *Dinsmore* v. *Duncan*, 57 N. Y. 573, 577; *Walker* v. *Scott*, 13 Ark 644–647; *Miller* v. *McIntyre*, 9 Ala. 638; *Sayre* v. *Lucas*, 2 Stew. [Ala.] 259; *Parks* v. *Duke*, 2 McCord, [S. C.] 381; *Mann* v. *Sutton*, 4 Rand. [Va.] 253; *Brown* v. *Jardahl*, [Minn.] 18 Rep. 278; *Osborn* v. *Restlers*, 35 O. St. 99; Biddle on Law of Stock Brokers, 157; *Martin* v. *Cole*, 9 Hun, 98; *Rawson* v. *Davidson*, 49 Mich. 607; *Birkenhead* v. *Brown*, 5 Hill, 635, 646; *Glyn* v. *Baker*, 13 East 509; *Couch* v. *Credit Foncier of England*, 29 L. T. R. [N. S.] 259–265; Edw. on Bills, [2d ed.] marg. 209; *Hopkins* v. *R. R. Co.*, 3 Watts & Sarg't 410; *Railroad Co.* v. *Howard*, 7 Wall. 415; *Richards* v. *Waring*, 39 Barb. 42 1 Keyes, 576; Daniel on Neg. Inst. [3d ed.] 488.) Even if the bonds of individuals are negotiable the bonds in question were not within that description, nor were they in the form of negotiable instruments. (Daniel on Neg. Inst. [3d ed.] §§ 91, 50, 79, 263.) These non-negotiable bonds were choses in action, and Sargent was the assignee thereof of Underwood. But the assignee of a chose in action can take no greater right or interest than his assignor possessed, and, except in the case of negotiable paper, is chargeable with all the equities that apply to him, and this is so even though he purchases without notice and for value. (*Ely* v. *McKnight*, 30 How. Pr. 97; *Commercial Bk. of Rochester* v. *Colt*, 15 Barb. 506; *Blydenburgh* v. *Thayer*, 3 Keyes, 295; *Weaver* v. *Borden*, 49 N. Y. 286; *Mech's. Bk.* v. *N. Y. & N. H. R. R. Co.*, 13 id. 629; *Callanan* v. *Edwards*, 32 id. 486; *Anderson* v. *Nichols*, 28 id. 603; *Ballard* v. *Burgett*, 40 id. 314; Lewin on Trusts [5th Eng. ed.] 619; *Mangles* v. *Dixon*, 3 H. of L. Cases, 702, 731; *Ford* v. *White*, 16 Beav. 120; *Phillips* v. *Phillips*, 4 De G., F. & J. 208.) If the bonds were negotiable, and it were material whether or not Sargent took them with notice, or whether or not he paid value for them, as matter of law, he had sufficient notice of plaintiff's claim and he paid no value for the bonds, although the trial court

found to the contrary. (*Taylor* v. *Bates*, 5 Cow. 376; *Ogilvie* v. *Jefferson*, 6 Jur. N. S. 970; *Dunn* v. *Hornbeck*, 72 N. Y. 80, 89; *Fulton Bk.* v. *N. Y. & S. C. Co.*, 4 Paige, 128.) Sargent, by receiving the bonds from Gray, ratified the acts of Gray, and so constituted him his agent, even if Gray had had no authority to act for him prior to the settlement. (*Meehan* v. *Forrester*, 52 N. Y. 277; *Jennings* v. *Moore*, 2 Vernon, 609.) The agreement between the plaintiff and Underwood was lawful. They had a right to determine the measure and mode of compensation to be made to the plaintiff for his services. (*Rooney* v. *Second Ave. R. R. Co.*, 18 N. Y. 368, 373; *Ely* v. *Cooke*, 28 id. 365; S. C. [below] 2 Hilt. 406; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443, 449; *Fowler* v. *Callan*, 102 id. 395.)

*John Clinton Gray* for respondent. The agreement between plaintiff and Underwood constituted no assignment of the action against Zabriskie to plaintiff, nor of the proceeds of any settlement or judgment therein. (*Trist* v. *Child*, 21 Wall. [U. S.], 441; *Rogers* v. *Hosack's Ex'rs.*, 18 Wend., 334; *Hoyt* v. *Story*, 3 Barb. 264; *Bradley's Case*, Ridg. Rep. temp. Hardwicke, 194; *Williams* v. *Ingersoll*, 89 N. Y. 518; *Wright* v. *Wright*, 70 id. 96; *Pulver* v. *Harris*, 52 id. 73.) The agreement vested in plaintiff no title or property in the Zabriskie suit which he could assert, nor was it any appropriation of the funds or proceeds to be recovered. (*Bradley's Case*, Ridg. Rep. temp. Hardwicke, 194, *Roger* v. *Hosacks Ex'r.*, 18 Wend. 334; *Hoyt* v. *Story*, 3 Barb. 264.) Where no absolute necessity exists, the court will not presume a trust. (*Cook* v. *Fountain*, 3 Swanst. 591.) Even where the attorney of record claims a lien under an agreement respecting his compensation, it must be made to appear that notice of the agreement was given, where the cause of action is assignable. (*Walsh* v. *Flatbush, etc., R. R. Co.*, 11 Hun, 190; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 444.) The facts disclose nothing more than a simple and legitimate transaction between Sargent as creditor and Under-

wood as debtor, whereby Underwood obtained a compromise with Sargent, and by paying $20,000 released his collaterals and undue note, and got a full release of all claims and demands, etc. (*Rapheal* v. *Bk. of England*, 17 C. B. 161.) For motives of policy and for the sake of safety in commercial transactions, the court should not interfere with defendant's possession of the bonds in question for they were negotiable coupon bonds, payable to bearer, and passed by delivery. (*Murray* v. *Lardner*, 2 Wall. 110; *Mercer Co.* v. *Hackett*, 1 Wall. 83; *Gelpecke* v. *Dubuque City*, id. 206; *Grant* v. *Vaughan*, 3 Burr. 15, 16; *Collins* v. *Martin*, 3 B. & P. 646; *Brainard* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 498; *In re Leland*, 6 Benedict [N. S.] 175.) The equities of the plaintiff are not equal to the equities of the defendant. Sargent has the best equity because he parted with his property. (*Rice* v. *Rice*, 2 Deering, 73; *Colyer* v. *Finch*, 5 H. L. Cases, 905, 920; *Livingston* v. *Dean*, 2 Johns. Ch. 479; *Murray* v. *Lylburn*, id. 441; *Taylor* v. *Gitt*, 10 Barr, 428; *Mott* v. *Clark*, 9 id. 399.) The defendant is in the position to avail himself of the plea that his testator was a *bona fide* holder for value without notice, and it is now well settled that such a plea is available for the protection of an equitable, as well as a legal holder. (*Moore* v. *Met. Bk.* 55 N. Y. 41; *McNeill* v. *Tenth Nat. Bk.*, 46 id. 325; *Park Bk.* v. *Watson*, 42 id. 490; *Bay* v. *Coddington*, 20 Johns. 637; *Colyer* v. *Finch*, 5 H. L. Cases, 920.) The plaintiff suffered Underwood to retain all the indicia of property and ownership and to the world he appeared as the absolute owner of the claim and the recovery. (*Queen* v. *Shropshire Co.*, L. R. 8 Q. B. 420, 441, 442.) The plaintiff can, in no event, recover because the payment of the bonds to Sargent was not merely to cancel a pre-existing indebtedness. (Willard's Eq. Jur. [Rev. ed.] § 256; *Coddington* v. *Bay*, 20 Johns. 637; *Farrington* v. *Frankfort Bk.* 24 Barb. 554; *Park Bk.* v. *Watson*, 42 N. Y. 490; *Lawrence* v. *Clarke*, 36 id., 128.) Where the true owner holds out another, or allows him to appear as the owner of, or as having full power of disposition over the prop-

erty, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. (*McNeil* v. *Tenth Nat. Bk.* 46 N. Y. 325; *Moore* v. *Met. Nat. Bk.* 55 id. 41.`

RUGER, Ch. J. The principal question presented by this appeal, when reduced to its simplest form, is whether a part owner of a chose in action, having authority to collect it, is entitled to retain the whole proceeds of such collection as a *bona fide* purchaser, if received by him in negotiable securities from the debtor.

Were it not that the courts below have answered affirmatively, we would have hardly supposed a contrary conclusion susceptible of reasonable doubt.

Other questions, incidentally involved, also appear from the facts, which, as found by the court, are substantially as follows: In January, 1869, Underwood owned a claim, resting in open account, against Zabriskie, arising out of stock transactions between them, upon which he claimed a balance due him exceeding $100,000. Zabriskie disputed his liability thereon and Underwood, not being able to obtain payment, entered into a contract in writing with the plaintiff, an attorney residing in the city of New York, by which it was agreed between them, that the said Fairbanks, for his services in endeavoring to collect certain claims owned by Underwood, among which was that against Zabriskie, " is to have one-sixth of whatever amount of money, securities, or property shall be received on account of such claims as shall be settled without suit, and one-third of whatever amount of money, securities or property shall be collected, or in any way be realized or received (whether on settlement or without settlement), on account of such of said claims as shall be put in suit, either in this or any other State or country," said Underwood " is to decide upon the terms and mode of settlement as to each and every of said claims, whether such settlement be before or after suit brought;" also to determine whether or not suits should be brought, and if brought out-

side of the State, to determine who should be the attorney therein.

In January thereafter Fairbanks, by Underwood's direction, caused suit to be brought to recover the claim against Zabriskie in a court of competent jurisdiction in the State of New Jersey, that being the State where Zabriskie resided, and the action was steadily prosecuted by Fairbanks until it was settled as hereafter stated.

In 1871 Underwood being indebted to Henry W. Sargent, the defendant's testator, by an assignment in writing, absolute in form, transferred his claim against Zabriskie to Sargent as collateral security. On or about June 18, 1872, Underwood, at the urgent request of Sargent, and without the knowledge of the plaintiff, agreed to a settlement of the claim against Zabriskie by authorizing Sargent to accept from him forty bonds, being part of a series of 200, for $500 each, having nine coupons for the payment of half yearly installments of interest payable to bearer, attached to each, and purporting to be made by one Sarah R. Haight, as executrix of the estate of Richard K. Haight, her deceased husband. By these bonds Sarah R. Haight agreed, as executrix, at a specified time to pay the same and also to pay semi-annual interest thereon according to the terms of said coupons, and also represented thereby that she had secured such payments by a trust mortgage executed by her as executrix, upon certain real estate situated in the city of New York and represented to be property, belonging to the estate of Richard K. Haight.

In pursuance of this agreement Underwood wrote and delivered to one Gray, the agent of Zabriskie, a written order addressed to the attorneys in New Jersey who had charge of the action against Zabriskie, stating that the action had been settled, and directing them to discontinue it upon payment by Zabriskie of their costs and charges and those of the referee. Underwood also, at or about the same time, executed and delivered a release of all claims against Zabriskie, to Gray to be delivered to Zabriskie, upon payment of the sum agreed upon for such settlement.

About June eighteenth Sargent, through his agent Monell, also delivered to Gray a duly executed release from Sargent to Underwood, of all claims and demands which Sargent had against Underwood, and also executed reassignments of the securities received by him from Underwood as collateral, with instructions to Gray to deliver them to Underwood after he should have received and forwarded to Sargent, the bonds received in settlement.

It also appears from the evidence that Zabriskie had notice of the assignment of the claim to Sargent, previous to the settlement, and authorized the delivery of the bonds to Sargent upon receiving a discharge from his liabilities to Underwood.

It must, under the findings of the trial court, also be assumed that neither Sargent nor Monell, at the time of such settlement, had any knowledge of the interest in the proceeds thereof, which was claimed by the plaintiff.

Under these circumstances, Fairbanks brings this action against Sargent to recover one-third of the bonds so received, or the value thereof, upon the ground that the agreement between him and Underwood constituted an equitable assignment of one-third of the property received on such settlement.

The first question in the case is as to the nature and extent of the right taken by Sargent in the Zabriskie claim by virtue of the assignment thereof to him by Underwood, and the rights growing out of the subsequent transactions between the parties.

Inasmuch as the Zabriskie claim was evidenced by no written acknowledgment from the debtor and was disputed by him, and was, from its nature, incapable of physical possession or manual delivery, no assignee from Underwood would acquire any superior right over any other assignee, by virtue of any possession or apparent ownership of the claim by his assignor. (*Muller* v. *Pondir*, 55 N. Y. 332.)

One assignee of such a claim from the owner must necessarily acquire the same interest in it that any other assignee does, and that is, in the absence of other controlling equities, an interest subject to the rule that he who is prior in point of

time is prior in right. Such a claim is at common law non-assignable, and its assignee, takes by virtue of an assignment thereof, an equitable interest only, which must be governed by equitable rules for its protection and enforcement. (*Moore* v. *Met. Bk.*, 55 N. Y. 41; *Ford* v. *White*, 16 Beavan, 120; *Phillip* v. *Phillip*, 4 De. G. F. & J. 208.)

It is undoubtedly the general rule that the assignee of a chose in action takes it subject to all the equities existing against it in the hands of his assignor, and can acquire no greater right or interest therein than belonged to his transferror.

It was said by Judge DENIO, in *Bush* v. *Lathrop* (22 N. Y. 535), that " the purchaser of a chose in action takes the interest purchased subject to all the defenses, legal and equitable, of the debtor who issued the security. * * * In the transmission of property of any kind from one person to another, the former owner can, in reason, only transfer what he himself has to part with, and the other can only take what is thus transferred to him. * * * It is unnecessary to refer to authorities for this general principle, or to point out the exceptions to it which have been created by the custom of merchants or by positive statutes. It is enough that the present case is not claimed to fall within any of those exceptions. But the rule, if limited in the manner I have stated it, does not aid the plaintiff; for it is not the equity of the debtor in these securities which is the question, but of the plaintiff's intestate against Preston, his immediate assignee; and the question is, whether the defendant is to be deemed to have purchased subject to this equity, or whether his assignment confers upon him a better title than his assignors, who were confessedly liable to it, had. The defendant claims that this is a latent equity, available, only between the parties to it, and that it did not accompany the security when it passed into the hands of a subsequent owner," The learned judge quotes the rule laid down by Lord THURLOW, that " a purchaser of a chose in action must always abide by the case of the person from whom he buys."

*Bush* v. *Lathrop* has been criticised in subsequent cases,

and so far modified, as to exclude from the operation of the principles there laid down, the case of a purchase in good faith of a non-negotiable instrument from an assignee of the real owner, upon whom he has by assignment conferred the apparent absolute ownership, when such purchase has been made in reliance upon the title apparently acquired by such assignee.

This modification is placed upon the ground of estoppel and it is held that the real owner has by the act of investing another with the apparent ownership of the property, estopped himself from disputing the title of one, who thereafter acquires it in good faith from such assignee. (*McNeil* v. *Tenth Nat. Bk.*, 46 N. Y. 325; *Moore* v. *Met. Bk.*, 55 id. 41; *Armour* v. *Mich. C. R. R. Co.*, 65 id. 111, 122.)

We understand the rule stated in *Bush* v. *Lathrop*, with the exception mentioned, stands in full force unquestioned. (*Ballard* v. *Burgett*, 40 N. Y. 314; *Weaver* v. *Barden*, 49 id. 286; *Moore* v. *Met. Bk.*, *supra*.)

Assuming, therefore, that Sargent could acquire from Underwood only such right as remained in him, after his agreement with plaintiff, it becomes material to inquire what rights, legal or equitable, were vested in Fairbanks by Underwood prior to the assignment to Sargent.

It is to be observed that plaintiff's claim does not rest for its support upon a lien as attorney rendering legal services for a client, but grows wholly out of the interest transferred to him by force of his agreement. It is also important to notice that this contract does not contain a provision by Underwood to pay plaintiff from the fund produced, or otherwise, but is an engagement that plaintiff shall have one-third of the proceeds of the collections in specie, or in such form as they shall be received from the debtor.

In the opinion of the learned judge writing at General Term, concurred in by the whole court, it was held that he did acquire an equitable lien upon one-third of the proceeds of the collection, and we concur in the opinion there expressed.

In addition to the authorities relied upon below, we also think the case is covered by our decision in *Williams* v. *Ingersoll* (89 N. Y. 508). It appeared in that case that certain attorneys were employed to transact the legal business required in the prosecution and defense of certain claims by one H. under an agreement that they were to be paid for their services out of any moneys H. should obtain or become entitled to from any of the suits or proceedings, and should have a lien thereon for all sums that might be owing or due them for their said services, which lien should be superior to any right which H. might have.

All of such actions and proceedings, among which was a claim by H. for damages in an action for malicious prosecution, were afterwards submitted to an arbitrator and he awarded to H. damages for such malicious prosecution in the sum of $10,000, which was attempted to be reached by certain attaching creditors of H.

It was held that the agreement operated as an equitable assignment to the attorneys of the award, and although not effective to transfer the cause of action for malicious prosecution by reason of its non-assignability, it yet attached to the award when it was made and was superior to any right of H. or those of his attaching creditors; that it was not needful in order to make such assignment or lien valid, that notice thereof should be given to the debtors, as the only effect of a want of notice would be to validate a subsequent *bona fide* payment of the award by them; and that as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, though he has given no notice to either the subsequent assignee, or the debtor, of such assignment. The court cited *Muir* v. *Schenck* (3 Hill, 228); *Greentree* v. *Rosenstock* (61 N. Y. 583); and *Freund* v. *Importers & Traders' National Bank* (76 N. Y. 352).

The case of *Wylie* v. *Coxe* (15 How. [U. S. R.] 415), seems also to be directly in point.

The fact that Underwood reserved the right of naming the

attorney who should conduct the prosecution of the claim when sued in a foreign state, or the right of determining the terms and mode of settlement, does not in any manner detract from the validity of the agreement as an equitable assignment. These provisions might affect the amount recoverable by the assignee in case of settlement, but it would be an unwarrantable construction of the contract to say that they were intended by the parties to defeat the main object of the agreement. Both assignor and assignee were equally interested in swelling the amount to be recovered, and it is not at all strange that Fairbanks should assent to a condition which would not probably injuriously affect him, and which Underwood had a right to impose as a limitation upon the interest intended to be conveyed.

It is quite clear that Fairbanks had done all that he could do to protect his interest in the Zabriskie claim; he had taken all the possession of the subject of which it was susceptible; he had evidenced his right by requiring a written agreement from the owner stating its consideration and extent, and he had assumed the control of the claim and was openly engaged in its prosecution to the knowledge of all parties. He was under no obligation to give notice of his rights to any party in order to perfect them, and could not have limited their control over the litigations, or the disposition of the proceeds thereof by Zabriskie, if he had done so.

By the terms of his agreement with Underwood he had precluded himself from interfering with any mode of settlement which Underwood desired to make, and this right was transferred by Underwood to Sargent and belonged exclusively to him, at the time such settlement was made.

It is claimed that Fairbanks should have notified Monell of his interest in the Zabriskie claim when an interview took place between them in July, 1871, and that in some way he has precluded himself from asserting an interest in the proceeds of the settlement by reason of his neglect to do so. There is no foundation for such a claim.

In the interview in question Monell informed Fairbanks, in

substance, that he wished to obtain information of the condition of the Zabriskie claim, as his client, one Sargent, held a demand against Underwood and was desirous of knowing what prospects he had of realizing something on it from that source.

Although Sargent then and for some months previous had been the actual owner of the claim, Monell not only suppressed that fact, but left it to be inferred that his only interest in the claim was the amount which he expected to obtain from Underwood as voluntary payment out of the proceeds thereof, and Monell then urged Fairbanks to continue the vigorous prosecution of the action.

We can see nothing in this statement that imposed any duty upon Fairbanks to disclose to Sargent or any other creditor of Underwood's the conditions of the contract under which he was prosecuting this claim.

If Monell had then informed Fairbanks of any intended action on the part of Sargent with reference to such claim, which should assume the absence of any interest by Fairbanks in the proceeds thereof, a different question might arise, but the notice to Fairbanks was disingenuous and equivocal, and suppressed the only information which it was important for Fairbanks to know, or for Sargent to give. Fairbanks could not have supposed that Sargent was then the sole owner of the Zabriskie claim, or that he was then, or expected soon to be engaged in a secret or clandestine effort to settle it, and absorb the proceeds of the litigation, to the exclusion of the attorney who was carrying it on.

Monell was himself a lawyer, and must be presumed to know, from the usual course of such business, that an attorney prosecuting a claim for an insolvent client, presumptively has an interest in the subject of the action, and he was under the obligation of good faith and fair dealing,to notify him of any disposition then known to him, which had been made of the claim involved, or of any attempt to assume control of and take the fruits of the litigation by a settlement thereof.

The disposition with which Monell interviewed Fairbanks is quite evident from the fact that when he set on foot the negotia-

tions by which the litigation was finally settled, although carried on in the same city where plaintiff resided, he was not consulted by any of the parties, or informed as to the negotiations, and his interests therein, although they were known to both Gray and Underwood and must also, to some extent, have been suspected by Monell, were wholly ignored by all the parties to the negotiations.

Sargent thus received the whole fruits of a litigation which, it is fair to assume, was the result in a great measure of the services and disbursements of Fairbanks rendered and expended to a considerable extent after Sargent had acquired his interest in the claim.

Every consideration of equity requires that such a claim should be protected, and there is nothing in the facts of the case upon which a superior equity in favor of Sargent's claim can justly be predicted.

The judgment of the General Term, however, was placed upon the ground that Sargent became the *bona fide* holder of the bonds in question by reason of the delivery thereof to him by Underwood, and the execution and delivery to Underwood by Sargent of a release of all claims and demands held by him against Underwood, and the reassignment of certain alleged securities held by Sargent as collateral to Underwood's debt.

Aside from the question as to whether the securities in question were negotiable paper it seems to us that the conclusions of that court, are not sustainable. If they are, it is quite clear that the subsequent assignee of a chose in action will be enabled to possess himself of the entire proceeds of the collection thereof to the exclusion of a prior assignee provided he obtain payment thereof, from the debtor in money or negotiable securities, and it seems to me to effect the abrogation of the rule that an assignee of a non-negotiable chose in action takes it subject to the equities of prior assignees.

We are, however, of the opinion that the court below misconceived the real nature of the transaction through which the collection of the Zabriskie claim was effected, and that Sargent, in fact and in law, received the bonds from Zabriskie and not from Underwood.

Even if the theory of the General Term were correct, as to the person from whom Sargent received the bonds, we are of the opinion that the consideration .paid by Sargent to Underwood was not sufficient to make him a *bona fide* holder thereof.

Upon such settlement Sargent delivered to Underwood three several instruments consisting of two reassignments and a release. The reassignments were of two claims previously assigned to Sargent by Underwood as collateral security for his debt.

The Zabriskie debt at the time of its reassignment had been settled and discharged and was necessarily valueless. The other claim is somewhat vaguely described, but it was testified to by Monell, that it was considered of no value both by himself and his client Sargent. The release was one executed by Sargent to Underwood discharging him from all debts and demands held by Sargent This release was the discharge of an insolvent from an antecedent liability. It was not, however, executed in consideration of receiving the bonds in question, for those, as we shall hereafter see, were received and held by virtue of an equitable right, already possessed by Sargent, and not by reason of Underwood's consent thereto.

The only legal consideration for this release was, therefore, Underwood's consent to the settlement, which precluded him from afterwards claiming that the Zabriskie claim was more valuable, than the amount received in satisfaction thereof.

Even if it be admitted that Sargent delivered this release in consideration of the receipt of the bonds it would constitute him a *bona fide* holder to the extent only of the value parted with by him. (*Moore* v. *Ryder*, 65 N. Y. 438, 442; *Cardwell* v. *Hicks*, 37 Barb. 458; *Lawrence* v. *Clark*, 36 N. Y. 128.)

Upon the facts stated it is quite apparent, however, that he parted with nothing of value to Underwood.

We think the courts below were misled by looking more at the form of the transaction than at its legal effect.

It is immaterial in what form the parties chose to put the

transaction if it is not in accordance with its legal effect, for equity will consider and adjudicate the rights of the parties according to the real nature of the transaction, without regard to its form. At the time the settlement was effected, Sargent was the apparent equitable owner of the Zabriskie demand, claiming to be its real owner, but concededly possessed of the absolute right to settle and discharge it and receive the proceeds of the collection, and Zabriskie had notice of these rights.

Sargent required no authority or consent from Underwood to authorize him to effect the settlement, and Zabriskie had no right or authority to settle and pay the claim to any one but Sargent.

Underwood never, actually or theoretically, had the bonds in his possession, and the only office he was called on to perform, in connection with the settlement, was to approve the act of his assignee Sargent in receiving $20,000, as a satisfaction thereof, and to execute a release to Zabriskie after the settlement was effected.

Such a release would have been entirely ineffectual for any purpose if it had not been subsequently ratified by Sargent and was of no more effect than if executed by Sargent or any other agent of his.

The only effect, therefore, of Underwood's consent to the settlement and execution of the release was to deprive him of the right of subsequently claiming against Sargent that it had been satisfied for less than the real value of the claim.

The consideration paid to Underwood was, therefore, wholly and exclusively for the acquisition of this right, and did not affect in any way Sargent's right or authority to settle the action or receive the proceeds thereof from Zabriskie.

The cause of action here was not put upon any interest in the bonds claimed to have existed before their transfer to Sargent, or upon the invalidity of the title acquired by him, but it is based upon the claim that they were valid securities in his hands, and that plaintiff's equities attached to them upon his receipt thereof.

Sargent was equitably chargeable with the duty of guarding the interest of his co-owner in the proceeds of the Zabriskie claim, and this, whether he was informed of such interest or not. The want of such notice did not, as we have seen, affect the validity of plaintiff's claim.

The question in the case, therefore, is whether, after Sargent acquired possession of the bonds, he became subject to any liability to third persons, by virtue of any prior equity existing in their favor in respect thereto.

Underwood, in his agreement with Fairbanks, having reserved the power to determine the terms and mode of settlement of the Zabriskie claim, and Sargent having, by the subsequent assignment to him, become vested with the same power, was subject to the same liability which would have attached to the bonds in the hands of Underwood, if the assignment to Sargent had not been made.

He could not, therefore, in any event, become a *bona fide* purchaser of the bonds to any greater extent than the value he had in the claim parted with. Sargent could not have supposed he was acquiring any equitable rights of third persons, by his assignment from Underwood or his settlement with Zabriskie, and his position in that respect was not changed or improved thereby.

Sargent must be presumed to have known the law, and that in collecting a non-negotiable chose in action, which he had acquired by assignment from another, he was subject to the liability of being required to satisfy the claims of prior assignees thereof.

He could not acquire an indefeasible right to such a claim by any form of assignment, and in discharging the debtor from his liability thereon he did so subject to his liability to unknown claimants, with equities superior to his own.

We think, therefore, that Sargent did not take the bonds in question as a *bona fide* purchaser, in respect that they were not acquired by him for a valuable consideration or in the ordinary course of business within the spirit and intent of the rule protecting *bona fide* purchasers of negotiable securities.

While Zabriskie received a valid discharge from his liability upon the claim in suit, because he received it from the apparent owner without notice of any hostile claim, yet, as we have seen, Sargent received the bonds subject to any latent equities existing in third parties to the claim which was discharged, and in that respect did not acquire the character of a *bona fide* holder by the transaction in question.

We are, therefore, of the opinion that the plaintiff is entitled to a new trial.

The judgments of the courts below should be reversed and a new trial ordered with costs to abide the event.

All concur, except DANFORTH. J., not voting.

Judgment reversed.