Edward B. LaFetra, Appellant, *v.* Hudson Trust Company, Respondent.

First Department, December 15, 1922.

Attorney and client — oral agreement by client to give attorney stated percentage of amount of claim recovered from receiver of defunct corporation constituted equitable assignment — third person taking assignment of liquidated claim with knowledge of agreement is liable to attorney for his interest.

An oral agreement by a client to pay his attorney forty per cent of the amount recovered on a claim against a defunct corporation, which is in the hands of a receiver, constitutes an equitable assignment of that part of the claim to the attorney.

And a third person who takes an absolute assignment of the claim after liquidation, as collateral security for a loan, with full knowledge of the agreement between the attorney and the client, is liable for forty per cent of the liquidated claim.

Appeal by the plaintiff, Edward B. LaFetra, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of February, 1922, upon the verdict of a jury rendered by direction of the court after a trial at the New York Trial Term.

*Blauvelt & Warren [Joseph A. Warren* of counsel], for the appellant.

*Holm, Whitlock & Scarff [Victor E. Whitlock* of counsel], for the respondent.

Dowling, J.:

The evidence in this record satisfactorily establishes the following state of facts:

On November 14, 1907, one John H. Springer was a creditor of the New York City Railway Company for which receivers had been appointed by the Federal court in New York city.

Springer's claims consisted of one for $500 for damages resulting from a collision between an automobile owned by him and a car operated by the company; a claim for $4,000 for damages to an automobile owned by him caused by collision between said automobile and a car of the company, and a claim for $25,000 for damages on account of injuries sustained by him in a collision between his automobile and a car of the company.

On the 14th of November, 1907, proofs of these claims were filed with the special master who had been appointed by the court to pass on all claims of creditors against the railway company. These claims were prepared and filed for the claimant, John H. Springer, by his attorney, one John T. Easton, who indorsed each

one of the proofs of claim as follows: " John T. Easton, Attorney for Claimant, 1 Madison Avenue, New York."

In March, 1908, the plaintiff was an attorney in the city of New York and a member of the firm of Kneeland, LaFetra & Glaze. He was requested by Springer about that time to prosecute these tort claims before the special master, because he had been unable to find or get in communication with the attorney, Easton, who had filed the claims.

The plaintiff's testimony as to what took place at this conference with Springer is as follows:

" After talking about the Reisler case and fixing my compensation in that case he said that Mr. John T. Easton, he could not find him and that it was necessary for somebody to try those cases before the Master in Chancery and he disappeared, he could not find him in any way and asked me if I would undertake the proof of those claims before the Master and what my charges would be, and I asked him whether he desired to pay me for the value of my services or what understanding he wanted me to take them upon. He said: ' What kind of an understanding will you make? ' And I said: ' I would take them upon a percentage of the claim.' I said: ' The New York City Railways Company are in the hands of a Receiver and from what you tell me of the claims I think they should be a good claim against them.' He said, ' What percentage? ' and I said: ' 50 per cent, that was my usual fee under those circumstances,' and he said that he thought that it was too much and asked me if I would make it any less and I asked him what he thought was fair and he said ' 40 per cent,' and I said, ' All right,' I would take it for 40 per cent."

The testimony of Springer is practically the same. He testified: " I asked Mr. LaFetra, I asked him if he would take these cases on a contingent basis, and he said he would, and I said: ' What percentage do you think you ought to have? ' And he said: ' Well, I think fifty per cent.' And I told him I thought that was a little excessive and we finally agreed at 40 per cent."

And on cross-examination Springer said: " Q. You came to an understanding, you stated, with the plaintiff in which you agreed to pay him a contingent fee of 40 per cent, is that correct? A. That is correct. Q. And that was to be paid him in case he recovered on the claims, is that correct? A. That is it. Q. And if he did not recover anything he was not to get anything, that was the understanding, I take it? A. That is the idea. Q. Is that correct? A. Yes."

Before entering upon the hearing before the special master plaintiff stated to the latter that Easton could not be located and

offered to put in a notice of appearance and to have a formal order of substitution entered, but the master stated that the claim was filed by Springer in his own name and Easton's name was indorsed on the back thereof, and he recognized the claimant only; that if plaintiff went on with the proceeding, he would become the attorney of record and any liquidating certificate would be issued in the name of Springer and plaintiff as attorney of record.

As the result of plaintiff's services before the special master Springer's three claims were liquidated in April and November, 1908, No. 1 for $275, No. 2 for $3,000 and No. 3 for $6,500, a total of $9,775. In each case the liquidating agreement was signed " Kneeland, LaFetra & Glaze, Attorneys for Claimant," though no formal order of substitution in place of Easton had in fact ever been signed or entered.

On January 1, 1909, plaintiff became a justice of the City Court of the City of New York, and on that date the firm of Kneeland, LaFetra & Glaze was dissolved. The other members of the firm assigned their interests in these claims to the plaintiff.

On April 3, 1911, the defendant made two loans to the John H. Springer Realty Company on notes which were indorsed by John H. Springer, one loan being for $12,000 on a demand note, and the other being for $8,000 on a note maturing in four months. The collateral given for these loans at the time consisted of a deed to certain real property, this collateral being described in the demand note for $12,000. This demand note was renewed on December 18, 1911, and the time note was renewed on August 3, 1911, and again on December 18, 1911. Shortly after the above loans were originally made, the defendant, by its treasurer, Mr. H. G. Lewis, demanded that Springer furnish additional security on the notes, stating that the committee representing the defendant trust company had examined the real estate already given as security and did not regard it as sufficient. This additional security was demanded by the defendant by virtue of a clause in the demand note wherein it was provided that the note should become due at once in case the existing security should become unsatisfactory and default should be made in furnishing additional security.

Springer accordingly delivered to the defendant on May 12, 1911, an assignment of his liquidated claims, numbered 1, 2 and 3, above mentioned.

At the time that defendant called upon Springer to give the additional security on the loans, he told H. G. Lewis, treasurer of defendant, that he could assign to it his right, title and interest in these tort claims, whereupon Lewis drew up the assignment. Springer was asked: " Q. At this time what did you tell him?

A. That this assignment was my right, title and interest, the first assignment I gave him was my right, title and interest and he drew it himself. Q. What did you tell him at the time, what did you tell him your interest was at the time? A. I told him 60 per cent, my interest was 60 per cent. Q. Did you tell him who had the other interest in it? A. Yes, sir, I told him that the attorney that brought the cases had 40 per cent. Q. Did you mention the attorney's name? A. Yes. Q. What did you tell him the attorney's name was? A. I told him that it was Mr. LaFetra. I might have said LaFetra & Glaze, I do not remember."

Samuel Lewis, Jr., formerly an employee of plaintiff's firm, but not so employed at the time of the occurrence in question, testified that he was present at the meeting between Springer and H. G. Lewis when the latter asked in behalf of the defendant that additional collateral be given on the notes, and that at that time Mr. Springer stated he thought that there was plenty of collateral there now but the only thing he had was a claim against the New York City Railways Company that had been — three claims that had been liquidated, and he said: " I have that interest and that ought to be worth nine or $10,000,' and I turned around to Mr. Springer and I said ' Are those claims that '— we used to speak of K., L. & G.— that ' K., L. & G. liquidated? ' and he said ' Yes,' and I said: ' You know that they have a lien on the claim and you cannot — you had better see them about it before you transfer or assign any of those claims, or offer that as security.' And Mr. Lewis then turned around and said: ' What is K., L. & G., a patent medicine,' and I said ' That is the way we speak of the firm name of Kneeland, LaFetra & Glaze,' we sign the initials ' K., L. & G.' And Mr. Lewis said ' What difference does that make, he has an assignable claim there,' he said; ' this thing will be cleaned up anyhow and that will give me some security, some additional security that will perhaps satisfy the directors of my bank.' " At this conversation the firm's interest was specified as being forty per cent. He further testified that he was present at a second conversation between Springer and H. G. Lewis when witness said to the latter (referring to plaintiff's firm's claim): " Whatever you do, you must bear in mind that there is an attorney's lien here of 40 per cent," to which H. G. Lewis replied: " Well, what of it?, we are only taking it as collateral security, and the probabilities are that we will never have cause to use this collateral, this additional collateral security."

At a third conversation between the same three persons, Samuel Lewis, Jr., called the attention of H. G. Lewis to the fact that the assignment as prepared by the latter was absolute, whereas in fact

there was an attorney's lien, to which H. G. Lewis replied: " ' Well, that is all right, we are perfectly willing to take care of Mr. LaFetra's firm in that regard,' he said ' I do not think that ' — he said ' Even if the worse comes to the worse there would be more than enough to take care of everybody on these claims.' "

None of this testimony as to statements made by H. G. Lewis was in any way controverted.

In November, 1911, a plan for the reorganization of the Metropolitan Street Railway Company was promulgated under which claimants of the New York City Railway Company were offered for an assignment of their tort claims certain bonds of a new company to be formed. The said John H. Springer and the Hudson Trust Company (at Springer's request) accepted said offer and assigned to the reorganization committee the liquidated claims in question. This assignment was without the knowledge or consent of the plaintiff. In accordance with the plan, bonds and scrip amounting to $14,662.50 of the New York City Railway Company were issued and delivered in lieu of the claims to the defendant, which thereafter sold the bonds and scrip realizing therefrom the sum of $9,471.60. This whole sum was applied by the defendant to the indebtedness of John H. Springer on the two notes of the John H. Springer Realty Company before mentioned. Later the plaintiff learned of these transactions and ratified the transfer of the claims to the reorganization committee and the issuance of the bonds as aforesaid. The defendant has wholly failed to pay over to the plaintiff his share of the proceeds of said bonds and plaintiff has never been paid by any one for his services in liquidating said claims.

A proceeding was brought in December, 1916, by George W. Glaze, one of plaintiff's partners, as the liquidating partner of the firm of Kneeland, LaFetra & Glaze, to recover for the services rendered by plaintiff's firm to Springer in liquidating the three tort claims above referred to and to establish a lien therefor. This proceeding was brought in the United States District Court for the Southern District of New York, in the receivership proceedings of the New York City Railway Company. Defendant herein intervened in the proceeding and opposed the granting of the relief sought. The proceeding was heard before Judge HAND, in the Federal court in January, 1917, and resulted in an order dismissing the petition. Mr. Glaze set forth in his sworn petition that plaintiff's firm had been retained by Springer under an agreement whereby Springer " agreed to pay petitioner's said firm for their services in the matter of said claims out of the recovery and contingent thereupon, 40% thereof." Mr. Glaze sought to

establish his forty per cent agreement upon the dividend of forty-two and one-quarter per cent that was finally paid by the receivers upon the tort claims, to the newly-organized New York Railways Company which had acquired said claims from the joint reorganization committee in consideration of the issuance of the new company's bonds.

The proceeding was dismissed in January, 1917, the order of dismissal setting forth the ground thereof, viz., " because the petition upon its face does not state facts sufficient to establish an attorney's lien." The opinion of Judge Hand shows that the decision was based on the fact that the plaintiff's firm had not obtained an order of substitution as attorneys for Springer, nor had they given express notice that they had a lien, to the Hudson Trust Company. The opinion states: " The mere fact that they used the word ' attorney,' without obtaining any order of substitution, did not give persons dealing with them a notice that they were acting other than as counsel, or as attorneys in fact. The Hudson Trust Company dealt with Springer and his attorney of record when they purchased the claim, and the petitioners cannot now, after such a great lapse of time, be heard to assert a lien against persons who appear to have had no actual notice."

In the case now before us it has been shown by uncontradicted proof that the Hudson Trust Company took the assignment of these claims with full notice of the outstanding interest claimed by plaintiff's firm of forty per cent thereof.

The action is at law to obtain a judgment in the sum of $3,910, with interest from April 1, 1912, that sum representing forty per cent of $9,775, the market value of the bonds received by Springer and by him transferred to defendant, as hereinbefore set forth.

Plaintiff contends that, inasmuch as this court has heretofore affirmed (190 App. Div. 907) an order of Special Term overruling the demurrer to the amended complaint and sustaining such complaint as sufficient, the objection that a cause of action has not been made out by plaintiff is untenable.

But the amended complaint, so sustained, contains the following allegation:

" III. At all the times hereinafter mentioned one John H. Springer, a tort claimant against certain receivers, hereinafter referred to, of the New York City Railway Company, retained the plaintiff's said firm as attorneys at law to prosecute certain claims held by him for final determination before William L. Turner, the special master hereinafter referred to. In consideration of said retainer and the services to be performed by the plaintiff's said firm, the said John L. Springer duly assigned to said plaintiff's

firm forty per cent. (40%) of the claims hereinafter referred to as numbered respectively 27, 28 and 29."

The question now presented for answer is, does the evidence received upon the trial of the action establish that Springer did in fact assign to plaintiff's firm forty per cent of the claims enumerated?

We have before us the case, briefly stated, of an attorney who has an agreement with his client that he shall receive for his services, as a contingent fee, forty per cent of whatever was recovered on certain claims; a recovery upon those claims through the services of the attorney; an assignment of the claims by the client to a third party as additional collateral for loans, with actual notice given to it by the client that his interest was only sixty per cent and that the attorney's interest (they being named) was forty per cent; that the client desired to assign only his right, title and interest in the claims, but that the third party caused an assignment to be drawn of the entire claims; that the third party expressed a willingness to take care of the attorney, as there would be more than enough realized to take care of everybody on the claims; that the third party realized $9,471.60 from the bonds and scrip received in settlement of the claims, all of which it applied to the payment of the client's indebtedness to it; and that it has never paid anything to the attorney on account of his forty per cent interest.

It is quite true that no formal written assignment was ever made to the attorney by his client of any interest in the claims, nor probably can it be successfully maintained that any legal assignment was effectuated by the agreement between the attorney and the client. But appellant urges that, upon the facts, an equitable assignment was created whereby the attorney became vested with a forty per cent interest in the claims.

The case principally relied upon by appellant as sustaining the proposition that an equitable assignment was created by the acts of the parties, is *Fairbanks* v. *Sargent* (104 N. Y. 108). The facts in that case were as follows: In January, 1869, one Underwood owned a claim against one Zabriskie, the liability upon which was disputed. Underwood entered into a contract in writing with Fairbanks, an attorney, by which it was agreed between them that Fairbanks for his services in endeavoring to collect certain claims (including that against Zabriskie) " is to have one-sixth of whatever amount of money, securities or property shall be received on account of such claims as shall be settled without suit, and one-third of whatever amount of money, securities or property shall be collected or in any way be realized or received (whether on settlement or without settlement) on account of such of said claims as shall be put in

suit, either in this or any other State or country." Suit was brought by Fairbanks for Underwood against Zabriskie in the State of New Jersey through local attorneys there. While it was pending, Underwood, being indebted to one Sargent, the testator of the defendant in the action, by an assignment in writing, absolute in form, transferred his claim against Zabriskie to Sargent as collateral security. In 1872 Underwood, without the knowledge of plaintiff, settled the claim against Zabriskie by authorizing Sargent to accept from him $20,000 in bonds. Underwood wrote the resident attorneys in New Jersey, who had charge of the action against Zabriskie, notifying them that the action had been settled and directing them to discontinue the same upon payment of their costs and charges and those of the referee, and at the same time Underwood executed and delivered a release of all claims against Zabriskie. Under the findings of the trial court, the Court of Appeals said (p. 115): " It must * * * be assumed that neither Sargent nor Monell [his agent], at the time of such settlement, had any knowledge of the interest in the proceeds thereof which was claimed by the plaintiff." Fairbanks brought his action against Sargent to recover one-third of the bonds so received, or the value thereof, upon the ground that the agreement between him and Underwood constituted an equitable assignment of the property received on such settlement. The Court of Appeals said (p. 117): "Assuming, therefore, that Sargent could acquire from Underwood only such right as remained in him, after his agreement with plaintiff, it becomes material to inquire what rights, legal or equitable, were vested in Fairbanks by Underwood prior to the assignment to Sargent.

" It is to be observed that plaintiff's claim does not rest for its support upon a lien as attorney rendering legal services for a client, but grows wholly out of the interest transferred to him by force of his agreement. It is also important to notice that this contract does not contain a provision by Underwood to pay plaintiff from the fund produced, or otherwise, but is an engagement that plaintiff shall have one-third of the proceeds of the collections in specie, or in such form as they shall be received from the debtor.

" In the opinion of the learned judge writing at General Term, concurred in by the whole court, it was held that he did acquire an equitable lien upon one-third of the proceeds of the collection, and we concur in the opinion there expressed."

While in the case now under consideration there was no express agreement that the attorney should have his forty per cent of the proceeds in the form in which they were received from the debtor, we have a still more significant statement by the client that his agreement with his attorney constituted an assignment to the latter

of forty per cent of the amount received in settlement of his claims. And the present case is still stronger than the *Fairbanks* case, in that the defendant had actual notice from the client that he owned only sixty per cent of the claims, and that the remaining forty per cent were owned by his attorneys. It is clear from the client's testimony that if he had prepared the assignment, he would have assigned only his right, title and interest in the claims (being sixty per cent), and the fact that the assignment was an absolute one, covering one hundred per cent, was due to its preparation by the defendant, which knew at the time when it prepared the same that it called for the assignment of a larger interest than the debtor owned in the claims.

*Fairbanks* v. *Sargent* again came before the Court of Appeals in 117 New York, 320, after a new trial, and that court reversed the order of the General Term which had reversed a judgment in favor of plaintiff, and affirmed the judgment of Special Term in plaintiff's favor. Upon the second appeal the court said (at p. 328): " Our first inquiry respects the character and extent of the right which Fairbanks acquired under his contract. We have already held that its terms operated as an equitable assignment to him of one-third or one-sixth of whatever money or property should be collected out of or received from Zabriskie in discharge of the latter's debt. (104 N. Y. 108.) Ordinarily we should content ourselves with a simple reference to that decision. But its correctness has been so challenged on this appeal and assailed with so much of force and ability as to justify on our part a reconsideration of the question in the light of the later argument. Let us, therefore, give our attention to the terms of the contract." The court then examined the contract and again reached the conclusion that an equitable assignment had been created and, therefore, plaintiff's claim was well founded.

While the first appeal in *Fairbanks* v. *Sargent* was distinguished in *Beran* v. *Tradesmen's National Bank* (137 N. Y. 450), it was because the language of the instrument of assignment in that case, and the general rule laid down in the *Fairbanks* case was in no way questioned. And in *Central Trust Co.* v. *West India Improvement Co.* (169 N. Y. 314) the decisions on both appeals in the *Fairbanks* case are again referred to and without interfering with the rule there laid down.

The doctrine of an equitable assignment in favor of the attorney, where he was to receive payment for his services out of the money realized out of suits conducted by him, was asserted in *Williams* v. *Ingersoll* (89 N. Y. 508), although in that case the agreement also

47

provided that the attorney should have a lien upon the recovery. In *Holmes* v. *Evans* (129 N. Y. 140) the agreement between the attorney and client was that the former should receive upon a settlement of or recovery upon the claims "fifteen per centum of such settlement or recovery in kind, in full of all services, if brought about within sixty days, and if not made until after that date, twenty-five per centum." Defendants reserved the right within sixty days to substitute a reasonable cash fee for the attorney's services in place of such proportionate part. The court held that the language of the agreements constituted an equitable assignment to the attorney of a fifteen per cent interest in the claims. As the court in that case said (at p. 145): "There must undoubtedly be a purpose to pass a present interest, but that interest may be absolute or qualified, a right to the immediate possession and enjoyment, or a right to such enjoyment postponed until the occurrence of some future event. In other words, the assignment may be made subject to limitations, conditions and qualifications, such as might be inserted in the conveyance or assignment of the legal estate in the same subject. The quality of the equitable estate is that, and that only, which the parties intended." In the present case it seems quite clear that what the attorney and client intended to accomplish was an immediate transfer of forty per cent of the recovery upon the claims to the attorney, payment being postponed until a recovery or settlement thereof was had.

In *Harwood* v. *LaGrange* (137 N. Y. 538) the agreement provided that the compensation for legal services of the attorneys and counsel in those actions should be contingent upon the result of the action and that such compensation should be had and received out of such results only. The court said: "That the agreement gave the plaintiff an equitable lien on or ownership as equitable assignee in the proceeds of the actions is not open to doubt. It has been so determined in many cases. (*Williams* v. *Ingersoll*, 89 N. Y. 508; *Fairbanks* v. *Sargent*, 104 id. 108 and 117 id. 320; *Boyle* v. *Boyle*, 106 id. 654; *Chester* v. *Jumel*, 125 id. 237.)"

The cases to which reference has been made, as likewise the present case, have to do only with the existence of a special agreement, whereby an equitable assignment of a part of a claim was created, and they do not turn upon the question of the existence of an attorney's lien. In the present case, plaintiff does not rely upon the existence of an attorney's lien and he might have difficulty in establishing the same, because neither he nor his firm had ever been substituted as attorney of record in the place of Easton, and the effort to establish such a lien in the Federal court had failed in part, for that reason.

It follows, therefore, that upon the facts appearing without dispute in the case under consideration the agreement of the attorney and client constituted an equitable assignment of forty per cent of any proceeds of a settlement or of a trial of the action, and of this agreement and its effect defendant had full notice and it took the assignment charged with that notice and is liable to plaintiff thereunder.

As the facts are not in dispute, it follows that the judgment appealed from should be reversed and judgment directed to be entered in favor of the plaintiff for the sum of $3,788.64 with interest on the sum of $2,155.50 from the 31st day of January, 1913, to the date of the entry of the judgment, and on the sum of $1,633.14 from November 5, 1913, to the date of the entry of judgment, together with the costs of this appeal and of the action.

Clarke, P. J., Smith, Page and Greenbaum, JJ., concur.

Judgment reversed, with costs, and judgment directed for plaintiff as indicated in opinion, with costs.   Settle order on notice.