**WOODBURY et al. v. ANDREW JERGENS CO. et al.**

**No. 281.**

Circuit Court of Appeals, Second Circuit.

Feb. 19, 1934.

Arthur Berenson and Lawrence Berenson, both of New York City, pro se.

William H. Chorosh, of New York City, for appellees.

Before MANTON, L. HAND and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This was a petition by a former attorney for the plaintiff, and one of its counsel, to declare void for lack of jurisdiction certain proceedings, in which it had been previously decided that they had abandoned the suit and were not entitled to any fees for their services. Woodbury v. Jergens Co. (C. C. A.) 61 F.(2d) 736. It will not be necessary to repeat what appears in our former opinion; we discuss the questions now raised, assuming an acquaintance with its contents. After it was handed down, the petitioners moved for a reargument on the ground that, as both they and the plaintiff were citizens of New York, and that, as the controversy between them was not connected with the main suit, the District Court had no jurisdiction over them, regardless of their consent to the trial of the issues, on which we had originally relied for our decision. This motion we denied without opinion, and the Supreme Court refused certiorari to our mandate. The ap-

pellants thereupon petitioned the District Court to itself declare the whole proceeding non coram judice. The judge, deeming himself concluded by our decision, denied the petition and this appeal followed. Two questions alone can arise; first, whether jurisdiction over the controversy was independent of the citizenship of the parties, because it was ancillary and incidental to the main suit; and, second, assuming that it would have been so ancillary had the main suit been "really and substantially" pending at the time when the final order was made, whether it was in fact then so pending. If it was not, the appellants argue that the proceeding fell within section 80 of title 28 of the United States Code (28 USCA § 80), and that only the District Court had power to dismiss it under that section. This was the reason, they say, why their application to us was necessarily futile, and why the District Judge was free to grant their petition.

There can be no doubt that the proceeding was strictly ancillary to the main suit, so far as concerned the fees of Lawrence Berenson, who was an attorney of record and had a charging lien under section 475 of the Judiciary Law of New York (Consol. Laws N. Y. c. 30). This lien made it impossible finally to dispose of the suit without his consent; the defendant was charged with notice of it (Coster v. Greenpoint Ferry Co., 5 N. Y. Civ. Proc. R. 146, affirmed 98 N. Y. 660), and he could have forced it to pay a second time, had it disregarded his rights. Rooney v. Second Avenue Railroad Co., 18 N. Y. 368; Bailey v. Murphy, 136 N. Y. 50, 32 N. E. 627; Peri v. N. Y. Central R. R. Co., 152 N. Y. 521, 46 N. E. 849; Beecher v. Vogt Mfg. Co., 227 N. Y. 468, 125 N. E. 831. Although Arthur Berenson, not being an attorney of record, had no charging lien, nevertheless the plaintiff had made an agreement with him and Lawrence and Chorosh, of which he stated the content in his own words in his answering affidavit; that in which he asked the District Court to fix his fees. He there swore that as to any damages recovered against the defendant, the plaintiff had agreed that "my associates and myself shall receive one third of the amount which shall be recovered by way of settlement, compromise or final judgment, or otherwise." Under that agreement he became by the law of New York an equitable assignee of the cause of action pro tanto. Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 6 L. R. A. 475, 58 Am. Rep. 490; Id., 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A.

475; Harwood v. LaGrange, 137 N. Y. 538, 32 N. E. 1000; LaFetra v. Hudson Trust Co., 203 App. Div. 729, 197 N. Y. S. 332, affirmed 236 N. Y. 533, 142 N. E. 272; Kennedy v. Steele, 35 Misc. 105, 71 N. Y. S. 237. Compare Williams v. Ingersoll, 89 N. Y. 508, and Holmes v. Evans, 129 N. Y. 140, 29 N. E. 233. The same doctrine obtains in a federal court. Wylie v. Coxe, 15 How. 415, 420, 14 L. Ed. 753; Ingersoll v. Coram, 211 U. S. 335, 365–368, 29 S. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. It is quite true of course that an attorney may at any time be dismissed even without cause. In re Paschal, 10 Wall. 483, 19 L. Ed. 992; The Flush, 277 F. 25 (C. C. A. 2); In re Dunn, 205 N. Y. 398, 98 N. E. 914, Ann. Cas. 1913E, 536. If he has been retained under a contingent fee, he cannot then recover under that contract; he is relegated to a quantum meruit (Sargent v. McLeod, 209 N. Y. 360, 103 N. E. 164, 52 L. R. A. [N. S.] 380; Kushner v. Ferris, 219 N. Y. 192, 114 N. E. 49; Martin v. Camp, 219 N. Y. 170, 114 N. E. 46, L. R. A. 1917F, 402); though his claim is still protected by the charging lien. Sargent v. McLeod, supra. As to Arthur Berenson's claim, it can scarcely be that an equitable assignee is in a weaker position than a statutory lienor, who is often referred to as such an assignee. He too may of course be dismissed, and his dismissal will prevent his contingent claim from ripening, but he will have his quantum meruit. And if he was secured for the whole contract, he must be secured for the quantum meruit, for the client can certainly not prejudice his position by a gratuitous dismissal. We have however found nothing on this point.

If the dismissed attorney has not misconducted himself, ordinarily he must be paid or secured before any order will be made ousting him, and for this reason, if there is a dispute, the court must determine whether he has forfeited his rights, and will ordinarily do so in the suit itself. In re Badger, 9 F.(2d) 560 (C. C. A. 2). So much is clear, at least when there is to be a substitution; and would, we should suppose, scarcely be denied. Here no substitution was asked, but the situation was no different because of that. The suit could not itself be terminated until the validity of the lien was decided, for the appellants were in effect parties plaintiff. Although the plaintiff could have settled it on any fair terms behind the appellants' backs (Poole v. Bel-

cha, 131 N. Y. 200, 30 N. E. 53; Fischer-Hansen v. Brooklyn Heights R. R., 173 N. Y. 492, 66 N. E. 395; In re Levy, 249 N. Y. 168, 163 N. E. 244); their concurrence or their elimination was necessary to any satisfaction. Thus it seems in principle plain that the adjudication of the issue of abandonment was as essential to the final termination of the main suit at bar, as the adjudication of a plea of abatement for the nonjoinder of parties plaintiff. The suit could not be disposed of and the defendant discharged, until it was decided who were the parties interested in the recovery. We have been able to find only two decisions in point and these in the District Court, but they accord with our view. Brown v. Morgan (C. C.) 163 F. 395; Buchner v. Metal Stamping Co. (D. C.) 19 F.(2d) 529. Wolfe v. Lewis, 19 How. 280, 15 L. Ed. 643, is not to the contrary. Lewis had been attorney for the plaintiff in a foreclosure suit in which all the money had been paid into court. He thereupon laid claim to so much of it as might prove to be due, not only for his services in the suit itself, but for all his other services to the plaintiff. By consent of the parties the issues were sent to a master who reported how much Lewis had earned for his work of all kinds. The District Court held that although the proceedings had been wholly irregular in form, as the money must be paid out of the registry somehow, the master's allocation would serve. The Supreme Court reversed this because the proceeding was without the form of a suit, had not "any relation to the case before the court;" and because the District Court had no "jurisdiction" over the proceeding. So far as the reference concerned Lewis's services outside the foreclosure, obviously his claims had nothing to do with the main suit; so far as they had, perhaps the court might have heard them, had the procedure been regular. But it is apparent that the difficulty could not have been that the District Court did not in fact have substantive jurisdiction, because the original plaintiff, who had been Lewis's client, and his executors after him, were all citizens of New York, and Lewis probably was a citizen of Alabama where the suit was brought, and certainly was not a citizen of New York. Whatever the proper explanation of the decision, it could not therefore have gone on the lack of that kind of jurisdiction which alone is material here. We think that the District Court in adjudicating the invalidity of the appellants' claim, was therefore within the incidental jurisdiction which it got in the main suit.

▮ What we have already said answers the second objection; that arising from section 80 of title 28, U. S. Code (28 USCA § 80). The theory is that because the main cause of suit was compromised before the incidental controversy was concluded, the last was not "really and substantially" within the jurisdiction of the District Court which ought to have so decided when the judge's eyes were opened. The main suit had not in fact been settled when this proceeding was commenced, and ordinarily jurisdiction once attached will continue until it has been fully exercised. But we do not rely on that; it would be a matter of entire indifference to the incidental jurisdiction of the District Court if the main suit had been completely settled even before September 19, 1929, when the original rule nisi issued. The settlement did not end the suit; not even a final decree would have done so. Its purpose qua damages, was to exact payment from the defendant; only satisfaction would do that. Since, as we have already said, it was impossible to force the defendant to make any payment, until the appellants' claim, secured as it was by the cause of suit itself, was either defeated, paid or secured, the ancillary jurisdiction of the District Court remained as ample after the settlement as before.

Decree affirmed.