JOSEPH BERAN, Respondent, *v.* THE TRADESMEN'S NATIONAL BANK of the City of New York, Impleaded, etc., Appellant.

Defendant D. claiming to have a valid demand against defendant, the T. N. Bank, for $40,000, commenced suit thereon. Thereafter, D. executed to one K. an assignment of $10,000 of said claim. The assignment stated that the suit was to proceed in the name of D., and at his expense, "to final judgment or settlement;" if he recovered, or compromised for less than $34,000, K. was "to accept" $9,000 in full discharge of all claims on his part against D. It was stipulated that the sum assigned to K. should "be paid to him immediately upon the payment or settlement by said bank," and the attorney of D., or his agent in the assignment or settlement, was authorized to pay to K. on receipt of the money, the amount due him under the assignment. D. was insolvent. Plaintiff, to whom K. had transferred all his interest under the assignment to him, served

upon the bank, notice of the assignments, with a demand that $10,000 of any verdict or adjustment made, be paid to him. The bank, thereafter, without notice to plaintiff, and without his consent or knowledge, settled with D., paying $6,500, and the suit was discontinued. In an action to enforce the assignments, *held,* that the bank had the right, under the assignment to K., to pay to D., or his attorney, the sum agreed upon on settlement, and that the notice given by plaintiff, did not enlarge his rights, as evidenced by, and springing from, said assignment.

*Fairbanks* v. *Sargent* (104 N. Y. 108; 117 id. 320), distinguished.

The bank offered evidence tending to show that the payment made by it was not in settlement of any claim of D., but for the purpose of terminating the litigation; this evidence was rejected. *Held,* error.

The fact that a defendant in an action pays money to stop an expensive litigation, carried on against him by an insolvent plaintiff, does not establish conclusively a recognition or admission of the validity of the claim in suit; the defendant may, while making such payment, wholly deny the existence of any real claim against him.

A defendant has a right thus to stop the litigation, and no assignment by the plaintiff, or notice to the defendant, of an interest in the alleged cause of action in another, can take away such right.

One claiming, therefore, as assignee of the plaintiff, does not establish his claim by mere proof of the payment; and the question as to whether the payment was in settlement of an acknowledged liability, or for the purpose solely of "buying peace," may be litigated by defendant.

*Fairbanks* v. *Sargent* (*supra*), distinguished.

(Argued March 7, 1893; decided March 21, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 4, 1892, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to enforce an alleged assignment of part of a claim set up by the defendant Michael Duffy against the defendant The Tradesmen's National Bank.

The facts, so far as material, are stated in the opinion.

*William W. Niles* for appellant. No case can be found where a party is held to pay a second time money which he has paid to a plaintiff or claimant when the claim of the plaintiff is positively denied, and there is no proof what-

ever of its validity. (1 Greenl. on Ev. 221, § 192; *Willliams* v. *Thorpe*, 8 Cow. 203.) Plaintiff never had a right to the costs of the plaintiff's attorney, which were the first lien, and which were paid to induce him to consent to sign the discontinuance of the action. (*Brill* v. *Tuttle*, 81 N. Y. 454; *Allen* v. *Mayor, etc.*, 90 id. 388.) Without some proof that Duffy's claim against the bank was valid, plaintiff could not recover. (*Casucci* v. *A. K. R. Co.*, 20 N. Y. Supp. 343; *Bush* v. *Lathrop*, 22 N. Y. 538; 116 id. 302; 118 id. 136, 462.)

*Henry Thompson* for respondent. The assignment from Duffy to Klaber and from Klaber to plaintiff of a portion of his, Duffy's, claim and interest in the lawsuit pending between him and the Tradesmen's National Bank is enforceable in equity, and became operative whenever, by a verdict and judgment or by an adjustment between the parties, the contingent interest, or expectancy of plaintiff, in that suit became fixed and liquidated. (*Field* v. *Mayor, etc.*, 6 N. Y. 179; *Ely* v. *Cook*, 9 Abb. Pr. 376; *Devlin* v. *Mayor, etc.*, 63 N. Y. 15; *Stover* v. *Eycleshimer*, 4 Abb. Ct. App. Dec. 309, 312; *Seymour* v. *C. R. R. Co.*, 14 How. Pr. 531, 539; *Wood* v. *Lester*, 29 Barb. 145, 154; *U. M. Co.* v. *Lounsbery*, 41 N. Y. 374; *Pennock* v. *Coe*, 23 How. [U. S.] 130; *Dunham* v. *P., etc., R. R. Co.*, 1 Wall. 268; *Chester* v. *Jumel*, 125 id. 237; *Fields* v. *Mayor, etc.*, 6 N. Y. 179; *Risley* v. *P. Bank*, 83 id. 329; *F. N. Bank* v. *Kimberlands*, 16 W. Va. 590; *Alger* v. *Scott*, 53 N. Y. 16; *Shaver* v. *W. T. Co.*, 57 id. 472; *People* v. *Comptroller, etc.*, 77 id. 48; *Ballou* v. *Boland*, 14 Hun, 359; *Parker* v. *Syracuse*, 31 N. Y. 793; *Fleckner* v. *U. S. Bank*, 8 Wheat. 338; Angell & Ames on Corps. § 300; *N. H. B. Co.* v. *P. Bank*, 3 N. Y. 156.) The court awarded to the plaintiff as damages the smallest sum that it could be possibly claimed he was entitled to, upon a decision holding that he was entitled to recover anything. (*Brill* v. *Tuttle*, 81 N. Y. 454; *Fairbanks* v. *Sargent*, 104 id. 108; 117 id. 320; *Dannat* v. *Mayor, etc.*, 77 id. 45; *Jones* v. *Mayor, etc.*, 90 id. 387; *Lauer* v. *Dunn*, 115 id. 405.) Defendant claims

that the plaintiff should have proved the cause of action of Duffy against the bank, but the assignment contemplated a settlement and payment by the bank without having the case go to judgment. (*Fairbanks* v. *Sargent*, 104 N. Y. 108; 117 id. 320; *Field* v. *Mayor*, etc., 2 Seld. 179; *Brill* v. *Tuthill*, 81 N. Y. 454; *Jones* v. *Mayor*, etc., 90 id. 387; *Dannatt* v. *Comptroller*, etc., 77 id. 45; *Lauer* v. *Dunn*, 115 id. 405.)

PECKHAM, J. Michael Duffy claimed to have a valid demand against the defendant bank to the extent of some forty thousand dollars. The details of that demand are not here important. To collect it, Duffy had commenced an action against the bank, which was pending when the circumstances now to be mentioned occurred. In order to pay a debt which he owed to one Klaber, Duffy assigned to him a portion of his, Duffy's, demand against the bank, to the extent of ten thousand dollars. This assignment recited the existence of the suit by Duffy against the bank, and after assigning the amount of ten thousand dollars thereof to Klaber, it continued in the manner following :

" The said suit is still to proceed in my name and at my expense to final judgment or settlement, and without any charge or expense to said Klaber.

"If I recover from said bank or compromise my claim against said bank for a sum less than thirty-four thousand dollars ($34,000), then said Klaber is to accept the sum of nine thousand dollars 'in full payment and discharge of said claim for the sum of ten thousand dollars and of all his claims and demands now in suit against me.

" The said sum so assigned by this instrument to said Klaber shall be paid to him immediately upon the payment or settlement by said bank, and I authorize and empower my attorney, who is conducting said suit, or whoever may act for me on the settlement or payment by said bank, to pay to said Klaber immediately upon the receipt of said money the amount due and assigned to him by and under this assignment."

The instrument was signed and sealed by both parties on the 27th of May, 1880. Subsequently Klaber assigned all his interest under this assignment to the plaintiff.

The plaintiff, on June 10, 1880, notified the bank in writing of the assignments and stated therein that "in any verdict against you or any adjustment made, that ten thousand dollars thereof are to be paid to me and on my receipt," and this notice was signed by the plaintiff and received by the bank.

Upon the trial of this action the court found as a fact that on the 22d of October, 1882, the bank made an agreement with Duffy for the settlement of the claim and suit and the action of Duffy against the bank was thereafter and on the 27th of October, 1882, settled and in pursuance of the agreement discontinued by order of the court and by the procurement of the bank, but without the knowledge or consent of the plaintiff, and without notice to him or regard to his rights, of which the bank had due notice, and that the bank paid in settlement of the claim of Duffy, the sum of $6,500, one thousand thereof to attorneys and referee and for expenses incident to the suit, and $5,500 directly to Duffy. The court, as a conclusion of law, found that there was due the plaintiff from the bank the sum of $5,500, with interest from October 23, 1882, amounting in all to the sum of $8,167.50, for which sum, together with costs, the court ordered judgment.

Upon appeal to the General Term the judgment was affirmed and from the judgment of affirmance the bank has appealed to this court.

Two questions arise in this court upon this appeal.

The first relates to the proper construction of the assignment and the second relates to the alleged error of the court in rejecting certain testimony tending to prove that the bank never paid any money in acknowledgement, settlement or satisfaction of the alleged claim of Duffy against it, but simply for the purpose of getting rid of an expensive litigation with an insolvent party, the expense of which would in any event fall chiefly upon it, or in other language that the so-called settlement was nothing but "the purchase of its peace," by the bank.

*First.* What is the proper construction of the language of the assignment? Did the bank have the right to pay the money to Duffy after notice of the assignment of a part of the claim? Taking the whole assignment together it seems to us that it had.

The last clause of the instrument contemplates that the payment to Klaber is to be made after the bank has itself paid the money. It is assumed that the assignor is to have the right to settle or compromise the claim and provision is specially made for the continuance of the pending suit in his name and at his expense to final judgment or settlement, and in case Duffy recovers or compromises his claim for less than a named sum, then Klaber is "to accept" the sum of nine thousand dollars in full payment and discharge of his claim for ten thousand dollars and of all his claims and demands against Duffy. From whom is Klaber "to accept" nine thousand dollars? It would seem to be from Duffy. It is to be in full payment of his claim against Duffy, and it is upon condition that Duffy recovers or compromises his claim against the bank for less than thirty-four thousand dollars.

The sum so assigned to Klaber is to be paid to him immediately upon the payment or settlement by the bank, and it would seem to be the natural meaning of the language that the payment spoken of was a payment to Duffy, the owner of the claim, and immediately upon the payment to Duffy, the sum assigned to Klaber was to be paid to him. If the payment to be made to Duffy were not made to him, provision is made for its payment to others, as Duffy authorizes or empowers his attorney or whoever acts for him on the settlement or payment by the bank, to pay Klaber immediately upon receipt of the money the amount due and assigned to him.

Would not the bank under this language have the right to pay the claim to the attorney for Duffy, or to whoever acted for him upon the settlement?

The money is to be paid Klaber immediately upon the payment or settlement by the bank. This does not mean that

the money is to be paid by the bank to Klaber immediately upon the settlement, but it means that when the settlement has been made and the money paid by the bank, then the amount coming to Klaber is to be immediately paid to him. It means that it is to be paid to him by Duffy, if he is acting for himself, and if not, and his attorney, or some one else, is acting for him, then Duffy authorizes such person, when he has received the money, to immediately pay Klaber's share of it to him. The assignment in *Fairbanks* v. *Sargent* (104 N. Y. 108 ; *S. C.*, on second appeal, 117 N. Y. 320), had no such language in it as is set forth in the last clause of this instrument. And it is the last clause which is the important matter in this case, and which shows precisely what was contemplated by the parties. That clause, it seems to us, controls the matter as to the right to receive payment from the bank, and shows that Duffy did not part with his right to compromise, and to himself receive payment from it. The question is asked, why assign at all, if Duffy were to still retain the right to himself receive payment, for if he received it, he could then pay it over as well without as with an assignment. He could do so, very likely, if other rights or equities had not in the meantime intervened in favor of some other creditor. But an advantage was certainly secured by the assignee, even upon the assumption of Duffy's right to receive the money in the first instance. The assignee would have an advantage over other creditors by virtue of such assignment, and that assignment would count for a good deal where the assignor was financially irresponsible.

Unquestionably, the assignment specially, and in terms, provides for the contingency of the money being paid by the bank to Duffy's attorney, or to any one authorized by Duffy to act for him, and in such event, it authorized the attorney or other person acting for Duffy to pay the amount due under the assignment to the assignee. I do not think it is a reasonable construction to say that Duffy's attorney, or any one authorized by Duffy, would have the right to receive the money from the bank while Duffy himself would not.

Upon a careful examination of the whole instrument, I think the assignee confided, and meant to confide in the honesty of Duffy, and in his willingness, in case he received the money, to pay over to the assignee the amount that would be due him under the assignment. This view is strengthened by the fact that Duffy retained the right to compromise and settle as he thought fit. We do not say such language would necessarily leave the right with Duffy to receive the money, but taken in connection with the last clause, it strengthens and supports what seems to us to be the meaning of the instrument.

The notice given by the plaintiff to the bank of the existence of the assignments, and of his rights under them, as claimed by him, does not enlarge those rights as evidenced by, and which spring from, the original assignment. If by that instrument, Duffy retained the right to receive the money from the bank, the plaintiff could not limit that right by a mere notice, or make the payment by the bank a wrong as against the assignee.

*Second.* We are also of the opinion that the court should have received the evidence tending to show that the payment by the bank was not in acknowledgement and settlement of any claim which Duffy was presenting against it, but that it was for the purpose of buying its peace and to terminate a litigation with an insolvent claimant, which however successful in the end would in any event result in large expense to it, which it could not recover against the other party to the litigation because of his insolvency. A party to a suit most certainly has the right to pay money to stop such a litigation. When he does so, it cannot be said that he thereby necessarily recognizes or admits the validity of the demands against him up to the amount he is willing to pay to secure a termination to the controversy from which he can reap no benefit, however successful may be his defense. This seems to us very plain, and no amount of notices or assignments can take away such right from a party against whom a claim is made.

The court below found that the defendant agreed with the assignor, Duffy, for a settlement of the suit and claim. It is said this fact appears by the wording of the order of discontinuance of the suit brought by Duffy against the bank and which the bank procured to be entered after the payment of the money. The order recites that " this action having been settled," on notice it is ordered, etc. Of course the action was settled. That was the very purpose of the bank, even if it be assumed that the bank was buying its peace. That is the meaning of the term itself. Something is to be settled, and the party receiving the money is to cease to sue, harass, or further annoy the party paying on account of the alleged claim or demand. The question is, whether the party paying, cannot while making the payment and providing for the cessation of further proceedings, at the same time wholly deny the existence of any real claim whatever?

The assignor could not assign to another a claim which in truth had no real and valid existence. He assumed to assign part of what he alleged was a valid claim, and if that claim were acknowledged to any extent and a payment made or a compromise agreed upon as an extinguishment or as an accord and satisfaction of such claim, then by the terms of the assignment the assignee was to be entitled to a certain amount of the proceeds of such settlement.

Unless there were some acknowledgment actual or implied, of the validity of the claim, or unless there had been some payment on account and in extinguishment of an admitted indebtedness to some amount, the plaintiff made no cause of action by merely proof of the payment of money to Duffy by the bank. Now whether there was such payment was a question at issue in the case and the language used in the order was not at all conclusive on that point. The evidence offered should have been admitted and submitted to the jury in connection with the other evidence upon this point, to the end that the jury might say in the light of all the facts what in truth was the nature of the payment; was it in settlement of an acknowledged liability, or was it for the other purpose

as alleged? If for the latter, the plaintiff had no legal right to prevent its payment by the bank to Duffy or to insist that it should be made to him.

We are, therefore, wholly unable to agree with the claim set forth in the court below, that if the bank did nothing but buy its peace in settling with Duffy, yet even in that event the payment by the bank, by reason of which the suit was discontinued, was a settlement within the meaning of the assignment. And if the assignment were intended to include such a payment as within its meaning, I think it was in such case wholly ineffectual as regards the bank.

The possibility that a person may thereafter choose to pay money to another to rid himself of a then existing litigation with an insolvent opponent and not by way of acknowledgment of any real and valid demand, is not so far the subject of an assignment by the party to whom the money may possibly be paid as to render a payment to such person wrongful after knowledge on the part of the person making the payment that such assignment had been executed.

The case of *Fairbanks* v. *Sargent*, already alluded to in discussing the first ground in this opinion, is again cited by respondent to show that it makes no difference upon the question now under discussion whether the party paying the money disputed the debt or not. We think that case holds no such doctrine. No such question arose. The debtor Zabriskie had disputed the indebtedness which Underwood alleged against him, yet he subsequently settled that indebtedness by a compromise, by the terms of which he gave up certain bonds in satisfaction of such indebtedness, and to that extent acknowledged its validity. There was no pretense set up that in making the payment Zabriskie was only buying his peace. The bonds were surrendered to Sargent by reason of an assignment from Underwood to him. Fairbanks also claimed an interest in the bonds by virtue of a prior assignment from Underwood of a certain interest in the claim of the latter against Zabriskie. The question of the validity of Zabriskie's payment did not arise, and no question was made as to its

being a purchase of his peace instead of a compromise and acknowledgment of the claim made by Underwood against him. Nothing was discussed or decided other than the conflicting interests of Fairbanks and Sargent in the bonds, assuming them to have been a valid payment in compromise of the claim of Underwood against Zabriskie.

We think, on both grounds discussed, there should be a new trial, and for that reason this judgment must be reversed.

All concur.

Judgment reversed.